MARY JANE STRICKLAND AND STEVEN RANDALL STRICKLAND, PLAINTIFFS v. GREGORY K. HEDRICK; CITY OF LEXINGTON; LARRY RITZ; MICHAEL NOYES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; SHELLY GUTIERREZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; BOBBY WELCH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; CHIEF JOHN LOLLIS, IN HIS OFFICIAL CAPACITY; AND TABITHA ROBERTSON, DEFENDANTS

No. COA08-339

(Filed 2 December 2008)

**1. Conspiracy; Malicious Prosecution— police officers— motion for summary judgment—good faith—governmental immunity—failure to offer evidence of corruption or malice—vicarious liability**

The trial court did not err by granting the motion by defendant police officers, city and police chief for summary judgment on plaintiffs' claims of conspiracy and malicious prosecution because: (1) both defendant police officers produced evidence establishing their good faith and that they are entitled to the affirmative defense of governmental immunity; (2) although plaintiffs dismiss defendants' evidence an attempt to use their self-serving testimony to establish a lack of malice or corrupt motive, plaintiffs cite no authority for the proposition that a party may not rely on his sworn testimony regarding an issue; (3) plaintiffs' deposition testimony largely corroborated that of defendants; and plaintiffs proffered no evidence of actions by these officers outside the scope of their employment, no evidence of corruption,

1

**STRICKLAND v. HEDRICK**

[194 N.C. App. 1 (2008)]

and no evidence supporting their contention that the warrants were issued upon false statement; (4) plaintiffs failed to rebut either the presumption that these law enforcement officers acted in good faith or the evidence that defendants presented; (5) plaintiffs failed to offer any evidence of corruption or malice by the police chief or the city, and the claims against these defendants are based on vicarious liability for the torts of the other officers; (6) the law enforcement officers' discretionary decision to not resolve all the factual details regarding the sequence of events before issuing a warrant was not evidence of malicious prosecution; and (7) unsupported allegations in a pleading are insufficient to create a genuine issue of fact where the moving adverse party supports his motion by allowable evidentiary matter showing the facts to be contrary to that alleged in the pleadings.

**2. Malicious Prosecution; Police Officers— governmental immunity—probable cause for arrest**

Municipal defendants were entitled to summary judgment on the claim of malicious prosecution based on the defense of governmental immunity and also on the separate basis that plaintiffs cannot prove the absence of probable cause for their arrests, which is an essential element of a malicious prosecution claim, when plaintiffs' own complaint was sufficient to charge plaintiffs with second degree trespass and felonious breaking or entering and larceny, even though those charges · were ultimately dismissed.

**3. Conspiracy— malicious prosecution—motion for summary judgment**

Municipal defendants were entitled to summary judgment on the claim of conspiracy because even if the claim is construed as alleging conspiracy to commit malicious prosecution, it is subject to dismissal since defendants were entitled to summary judgment on the claim of malicious prosecution.

**4. Conspiracy; Malicious Prosecution— civil conspiracy— motion to dismiss—probable cause—failure to allege agreement—improper legal standard**

The trial court did not err by granting the motion by defendant purchaser of plaintiffs' sign business for dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) of malicious prosecution and civil conspiracy claims because: (1) when ruling on a motion to dismiss under Rule 12(b)(6), the trial court considers only the plead-

ings, and plaintiffs' argument that defendant was deeply involved in knowingly bringing false charges against plaintiffs was based on evidence outside the pleadings; (2) the allegations of plaintiffs' complaint revealed that they could not prove the lack of probable cause, and the complaint did not state any claims against defendant individually; (3) generalized allegations that defendant landlord acted with one or more other defendants was not sufficient to state a claim against defendant purchaser; (4) the allegations of plaintiffs' complaint generally establish the existence of probable cause to charge plaintiffs with second degree trespass and felonious breaking or entering and larceny; (5) in regard to the civil conspiracy claim, plaintiffs' complaint does not allege an agreement between defendant and anyone else, and plaintiffs failed to allege there was an agreement among defendants; and (6) assuming arguendo that the trial court used an improper legal standard, the trial court is not required on this basis alone to determine that the ruling was erroneous.

5. **Conspiracy; Malicious Prosecution— malicious prosecution—motion for summary judgment—sufficiency of evidence**

The trial court did not err by granting defendant landlord's summary judgment motion even though plaintiffs contend there were genuine issues of material fact regarding the claims of conspiracy and malicious prosecution because: (1) the lease corroborated the landlord's testimony that he did not lease any part of the pertinent warehouse to plaintiffs, and that their brief discussion about the warehouse in July 2002 did not result in any modification of the terms of the lease; (2) plaintiffs did not produce a signed modification of the lease, an amended lease, or any documentation supporting their claim of a leasehold over the warehouse; (3) the landlord's testimony established that plaintiffs defaulted on the obligation to pay monthly rent, unilaterally transferred the lease without permission effective 1 August 2002, and had not removed their personal belongings from the building by 29 August 2002; (4) the act of giving honest assistance and information to prosecuting authorities does not render one liable for malicious prosecution; and (5) plaintiffs produced no evidence that the landlord asked the police to arrest plaintiffs, gave a sworn statement in the case, spoke with the district attorney, filed an official complaint, or otherwise acted to initiate charges against plaintiffs.

### 6. Appeal and Error— preservation of issues—failure to appeal from order—failure to allege in complaint—failure to proffer evidence

Plaintiffs' assignments of error that the trial court erred by granting summary judgment in favor of defendant landlord on the claims of unfair or deceptive trade practices and conversion were not before the appellate court because: (1) plaintiffs' conversion and abuse of process claims against the landlord were dismissed on 19 June 2006, and plaintiffs did not appeal from this order; (2) in regard to the unfair or deceptive trade practices claim, although plaintiffs asserted the landlord charged an exorbitant rent, plaintiffs neither alleged it in their complaint nor produced any evidence on this issue, and plaintiffs cannot rely on the allegations in their complaint to defeat a properly supported summary judgment motion; and (3) plaintiffs failed to proffer evidence of the landlord's alleged false allegations of trespass and theft against plaintiffs.

### 7. Appeal and Error— appealability—failure to timely file notice of appeal—failure to file petition seeking certiorari

Plaintiffs' appeal from the 22 May 2006 dismissal of their claims against the municipal defendants under 42 U.S.C. § 1983 for violation of their constitutional rights was not properly before the Court of Appeals because: (1) plaintiffs failed to timely file notice of appeal and have not filed a petition seeking certiorari; and (2) the jurisdictional requirements of N.C. R. App. P. 3(d) may not be waived by the Court of Appeals even under its discretion granted by N.C. R. App. P. 2.

Appeal by Plaintiffs from Orders entered 22 May 2006 and 31 May 2006 by Judge Ronald E. Spivey; and appeal by Plaintiffs and Defendants from Order entered 16 November 2007 by Judge Steve A. Balog, all orders entered in Forsyth County Superior Court. Heard in the Court of Appeals 23 September 2008.

*Robertson, Medlin & Blocker, PLLC, by Jonathan Wall, for Plaintiff-Appellants/Appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by Allan R. Gitter, Jack M. Strauch, Bradley O. Wood, and Carol B. Templeton, for Defendant-Appellants City of Lexington, Michael Noyes, Shelly Gutiererrez, and John Lollis.*

STRICKLAND v. HEDRICK

[194 N.C. App. 1 (2008)]

*Frazier, Hill & Fury, RLLP, by William L. Hill, Torin L. Fury, and James Secor, III, for Defendant-Appellee Gregory Hedrick.*

ARROWOOD, Judge.

This appeal arises from a complaint filed by Plaintiffs in Forsyth County, North Carolina, in response to criminal charges brought against them in Davidson County. The factual background of Plaintiffs' claims is summarized as follows: In 2002 Plaintiffs (Mary Jane Strickland and her son, Steven Strickland), operated a sign business at 218 Anna Lewis Drive, Lexington, North Carolina, in a commercial space rented from Dr. Gregory Hedrick beginning on 1 January 2002. Plaintiffs concede that by July 2002 they were delinquent on their rent payments, although the parties disagree about the amount of Plaintiffs' debt. In addition to leasing Plaintiffs a commercial office, Hedrick allowed them to leave personal possessions in part of a separate warehouse on the same property; a medical practice used the rest of the warehouse space as a separately enclosed medical records storage facility.

In August 2002 Plaintiffs sold the sign business to Larry Ritz, who assumed the lease obligation on 1 August 2002 and took possession of the property on 15 August 2002. Thereafter, conflicts arose among the parties. On 29 August 2002 Ritz reported to the police that Plaintiffs had stolen computer software included in the sale of the business. Also on 29 August 2002, Plaintiffs learned that Hedrick had changed the locks to the warehouse area. On 30 August 2002 Plaintiffs tried to get into the warehouse, but Hedrick refused them access, asked for payment of the money Plaintiffs owed him, and called the police. Several Lexington law enforcement officers arrived at the warehouse, including Officer Michael Noyes. In Noyes's presence, Hedrick and Ritz accused Plaintiffs of stealing Ritz's computer software. The officers looked in the warehouse for this software, but did not find it.

Plaintiffs assert that during their interaction at the warehouse on 30 August, Noyes addressed them in an abusive manner and appeared to favor Hedrick in the parties' dispute. Noyes denied this in his deposition testimony, stating that he told Plaintiffs to leave or face trespassing charges, but did not raise his voice or speak rudely to Plaintiffs. The parties agree that Noyes' only personal contact with Plaintiffs was on 30 August 2002, and that no charges were filed that night.

On 14 September 2002 Plaintiffs returned to 218 Anna Lewis Drive and entered the warehouse through the medical records office, ignoring the protests of its employees. Plaintiffs stayed for about five minutes and removed several boxes of items. This incident was reported to the police. On 20 September 2002 Hedrick reported that Plaintiffs had broken into the warehouse again that day, and that Plaintiffs had taken Ritz's computer software. Police officers questioned Plaintiffs about this on 20 September 2002, and warned them to stay away from the property at 218 Anna Lewis Drive.

On 24 September 2002, a Davidson County magistrate issued warrants for Plaintiffs' arrest, based upon information provided by Officer Shelley Gutierrez. Plaintiffs were charged with felony breaking or entering of the warehouse on 14 September 2002, felony larceny from the building, and 2nd degree trespass, also on 14 September 2002. In February 2003 Plaintiffs were tried in Davidson' County District Court on the charges of 2nd Degree Trespass. On 11 February 2003 Plaintiffs were found not guilty of 2nd Degree Trespass, and the District Attorney voluntarily dismissed the felony charges.

On 10 February 2006 Plaintiffs filed suit against Defendants Larry Ritz; Dr. Gregory Hedrick; Tabitha Robertson; the City of Lexington; Lexington Police Chief John Lollis; and Lexington Police Officers Shelley Gutierrez, Michael Noyes, and Bobby Welch. Noyes, Gutierrez, and Welch were sued in their official and individual capacities. Plaintiffs brought claims of civil conspiracy and malicious prosecution against all Defendants; claims of abuse of process against Hedrick and Ritz; claims of conversion and unfair or deceptive trade practices against Hedrick; and a claim against the police officers under 42 U.S.C. § 1983, for violation of their U.S. Constitutional rights.

The complaint generally asserted that the Defendants had conspired to knowingly provide false testimony in support of "bogus warrants" charging Plaintiffs with criminal offenses. Plaintiffs alleged that Defendants acted maliciously or recklessly and had continued to prosecute Plaintiffs "after it became apparent the claims were bogus[.]" The complaint also asserted that Hedricks acted with the collateral purpose of collecting the debt owed him. Plaintiffs sought compensatory and punitive damages.

On 14 March 2006 Defendants City of Lexington, and Officers Lollis, Noyes, Gutierrez, and Welch (the municipal Defendants), filed

a motion under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2007), seeking dismissal of Plaintiffs' claims, on the grounds that the claims were barred by the applicable statute of limitations and otherwise failed to state a claim for relief. On 22 May 2006 Judge Ronald Spivey ruled on their motion in an order stating in pertinent part:

1. Count I of plaintiffs' Complaint, . . . for civil conspiracy, is not barred by the statute of limitations and otherwise states a claim . . . [against] Noyes, Gutierrez and Welch[.] . . . [The] motion to dismiss . . . is DENIED;

2. Count II of plaintiffs' Complaint, . . . for malicious prosecution, states a claim . . . against the moving defendants[.] . . . [The] motion to dismiss as to Count II is DENIED;

3. Count III of plaintiffs' Complaint . . . for abuse of process, is barred by the applicable statute of limitations[.] . . . [These] claims . . . [are] DISMISSED WITH PREJUDICE;

. . . .

5. Count VI of plaintiffs' Complaint . . . pursuant to 42 § U.S.C. 1983, is barred by the applicable statute of limitations, and, with respect to defendants City of Lexington and John Lollis, is also barred [by] the lack of any allegations in plaintiffs' Complaint that . . . deprivation of plaintiffs' rights . . . occurred pursuant to any policy or custom of defendants City of Lexington or John Lollis[.] . . . [Plaintiffs' claims under § 1983] are hereby DISMISSED WITH PREJUDICE[.]

On 10 April 2006 Ritz moved to dismiss Plaintiffs' claims against him, under Rule 12(b)(6). Judge Spivey granted Ritz's motion on 31 May 2006, dismissing all of Plaintiffs' claims against Ritz.

The 22 May 2006 order denied the municipal Defendants' motion for dismissal of Plaintiffs' claims for malicious prosecution and civil conspiracy. Defendants answered on 12 June 2006, denying the material allegations of Plaintiffs' complaint and raising various defenses. On 22 June 2006 Plaintiffs filed a notice of appeal from the orders of 22 May and 31 May 2006. The municipal Defendants moved to dismiss Plaintiffs' appeal from the 22 May 2006 order. Judge L. Todd Burke granted their motion on 15 September 2006, dismissing Plaintiffs' appeal of the 22 May 2006 order as untimely. On 15 December 2006 Plaintiffs withdrew their remaining appeal, from the 31 May 2006 order.

**STRICKLAND v. HEDRICK**

[194 N.C. App. 1 (2008)]

On 10 October 2007 the municipal Defendants filed a motion on behalf of Officers Lollis, Noyes, Gutierrez, and Welch in their official capacities, seeking summary judgment on Plaintiffs' claims of malicious prosecution and civil conspiracy. Defendants asserted that the claims were barred by governmental immunity. On 20 October 2007 the municipal Defendants filed a second summary judgment motion, this time seeking summary judgment for these Defendants in both their individual and official capacities. Defendants asserted that Plaintiffs had produced no evidence to support their claims, and reiterated that Defendants were entitled to governmental immunity.

On 17 April 2006 Hedrick answered Plaintiffs' complaint, denying its material allegations, asserting various defenses, and seeking dismissal of the claims against him. On 19 June 2006 Judge Richard W. Stone entered an order granting Hedrick's motion for dismissal of Plaintiffs' claims of conversion and abuse of process, but denying his motion for dismissal of the claims of civil conspiracy, malicious prosecution, and unfair or deceptive trade practices. On 30 October 2007 Hedrick filed a motion for summary judgment on the three remaining claims.

On 16 November 2007 Judge Steve A. Balog entered an order granting Hedrick's summary judgment motion and denying the municipal Defendants' summary judgment motions. The municipal Defendants have appealed from the denial of their summary judgment motions. The Plaintiffs appeal from: the part of the 22 May 2006 order dismissing Plaintiffs' claims under 42 U.S.C. § 1983; the 31 May 2006 order granting Ritz's motion for dismissal under Rule 12(b)(6), and; the 16 November 2007 order granting summary judgment for Hedrick.

## Scope of Appeal

Preliminarily, we note that Robertson did not file an answer, and on 24 September 2007 Plaintiffs obtained an entry of default against her. On 13 November 2007 Plaintiffs voluntarily dismissed all claims against Welch. Neither Welch nor Robertson are parties to this appeal. Further, Plaintiffs did not appeal from the dismissal of their claims for abuse of process or conversion.

## Appeal of Municipal Defendants

[1] Defendants City of Lexington, Police Chief Lollis, and Police Officers Noyes and Gutierrez, appeal the trial court's denial of their

STRICKLAND v. HEDRICK

[194 N.C. App. 1 (2008)]

motion for summary judgment on Plaintiffs' claims of conspiracy and malicious prosecution. They argue that Defendants Lollis, Noyes, and Gutierrez enjoy "quasi-judicial immunity and/or public official's immunity" and that "Plaintiffs have failed to forecast evidence of essential elements of their claims." We agree.

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007).

The movant "bears the initial burden of demonstrating the absence of a genuine issue of material fact[,]" *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 123 (2002), and may meet its burden of proof "by (1) proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party (2) cannot produce evidence to support an essential element of his or her claim, or (3) cannot surmount an affirmative defense which would bar the claim." *Bernick v. Jurden*, 306 N.C. 435, 440-41, 293 S.E.2d 405, 409 (1982) (citation omitted).

"When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). "All inferences of fact must be drawn against the movant and in favor of the nonmovant." *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (citations omitted). However, N.C. Gen. Stat. § 1A-1, Rule 56(e) provides in relevant part that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. . . .

"A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be

admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) (citations omitted).

Defendants assert the affirmative defense of governmental immunity. "An affirmative defense is a defense that introduces a new matter in an attempt to avoid a claim, regardless of whether the allegations of the claim are true." *Williams v. Pee Dee Electric Membership Corp.*, 130 N.C. App. 298, 301-02, 502 S.E.2d 645, 647-48 (1998). "[A]s a complete bar to liability, governmental immunity constitutes an affirmative defense." *Clayton v. Branson*, 170 N.C. App. 438, 449, 613 S.E.2d 259, 268 (2005) (citations omitted).

"Under the doctrine of governmental immunity, a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function." *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993) (citations omitted). "Police officers . . . are public officials. As public officials, they share defendant City of [Lexington's] governmental immunity from liability for 'mere negligence' in performing governmental duties, but are not shielded from liability if their alleged actions were corrupt or malicious or if they acted outside of and beyond the scope of their duties." *Shuping v. Barber*, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988) (citations omitted).

Accordingly, "a public official engaged in the performance of governmental duties involving the exercise of judgment and discretion may not be held personally liable . . . unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties." *Andrews v. Crump*, 144 N.C. App. 68, 76, 547 S.E.2d 117, 123 (2001). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *In Re Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890-91 (1984) (citations omitted).

"It is well settled that absent evidence to the contrary, it will always be presumed 'that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law.' This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence." *Leete v. County of Warren*, 341 N.C. 116, 119, 462 S.E.2d 476, 478 (1995) (quot-

ing *Huntley v. Potter*, 255 N.C. 619, 628, 122 S.E.2d 681, 687 (1961); and citing *Painter v. Board of Education*, 288 N.C. 165, 178, 217 S.E.2d 650, 658 (1975)). Moreover, "[e]vidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." *Dobson v. Harris*, 352 N.C. 77, 85, 530 S.E.2d 829, 836 (2000).

In the instant case, evidence before the trial court included affidavits and the deposition testimony of the Plaintiffs; Officers Noyes, Gutierrez, and Egelnick; Ritz and his employee Robertson; and Hedrick. As pertinent to the issue of governmental immunity, this evidence included the following:

Noyes testified that on 29 August 2002 Ritz reported that his computer software had been stolen. On 30 August 2002, while on duty as a Lexington Police Officer, he was summoned to the commercial property at 218 Anna Lewis Drive. When he arrived, Officer Egelnick and Hedrick were "discussing items being missing." Hedrick was refusing to allow Plaintiffs into the warehouse, and wanted Plaintiffs to return Ritz's software and to pay him the back rent they owed. Noyes told the Plaintiffs to leave the premises and warned that they would face trespass charges if they returned. While Noyes was at the warehouse, Ritz arrived and told the officers that computer software had been taken from the sign business office.

Noyes testified that Hedrick never asked him to file false charges or to provide false testimony, and described Hedrick as an acquaintance with whom he had no business dealings. He denied using abusive, inappropriate, or threatening language towards Plaintiffs. Noyes testified that he did not draw up the warrants, was not notified when the case was in court, and was not subpoenaed to testify. His participation in the case was limited to his presence at the warehouse on 30 August, interviews with witnesses, and discussion with Gutierrez. Noyes instructed Gutierrez that if Plaintiffs continued to return to the property after being told to stay away, that he should issue arrest warrants. He testified that Gutierrez issued warrants on the basis of information provided by several law enforcement officers.

Ritz testified that in August 2002 he purchased Plaintiffs' sign business. He did not rent the warehouse space or have a key to the warehouse door. Although he assumed the lease on 1 August 2002 and took possession of the sign business on 15 August 2002, Plaintiffs

kept a key for a few weeks after that. The sale included computers and equipment associated with the business, and specifically included a box of discs and computer software. This box of software disappeared the same weekend that Plaintiffs moved their belongings out of the sign shop. Ritz testified that Plaintiffs took the software and discs, removed certain programs from the computers, and removed the business records from the sign business. After the software disappeared, Ritz reported the missing discs to police and also spoke with Robertson, Hedrick, and the District Attorney about the missing software.

On the night of 30 August 2002 Ritz was driving past the building, saw police lights in the warehouse area, and stopped to investigate. Hedrick and Plaintiffs were at the back entrance to the warehouse, arguing about Plaintiffs' access to the warehouse and their debt to Hedrick. When Ritz testified at Plaintiffs' trespassing trial, the trial court did not allow him to testify about the missing software, ruling that the missing software was a civil matter. Ritz strongly denied the material allegations of Plaintiffs' complaint, calling each of them "a lie."

Officer Gutierrez testified that in September 2002 he was employed by the Lexington Police Department. While on duty, he received phone calls from Robertson and from Ritz reporting the theft of Ritz's software. Gutierrez, who was assigned to investigate the case, learned from others that the Plaintiffs had "continuously stalked" the employees of the medical practice that stored patient files in the warehouse, and that on at least one occasion Plaintiffs had "forcibly entered" the warehouse through the medical records area, despite being told to stay away. Gutierrez took a statement from Robertson and interviewed Vickie Clodfelter, an employee of the medical practice, who reported that on 14 September Plaintiffs barged into the warehouse and removed items. Officer Noyes told Gutierrez that during the 30 August 2002 incident at the warehouse he warned Plaintiffs they would face trespassing charges if they returned, and directed Gutierrez to issue arrest warrants if Plaintiffs continued to trespass at 218 Anna Lewis Drive. Gutierrez testified further that in September 2002 the police received complaints that Plaintiffs were "stalking" tenants of 218 Anna Lewis Drive. On 24 September 2002 Gutierrez presented this information to a magistrate, who issued warrants for Plaintiffs' arrest. Gutierrez did not serve the warrants and had no further involvement with the criminal proceedings.

In her deposition, Robertson testified that she had worked at the sign shop, first for Plaintiffs and then for Ritz. The missing software had been in a box in the commercial shop area. After the 30 August incident, Plaintiffs began following her and watching the business from across the road. She reported Plaintiffs' behavior to police at least once. On both 14 September and 20 September 2002 employees of the medical practice told Robertson that Plaintiffs had broken into the warehouse. Robertson denied the material allegations of the com-plaint, testifying that she had not been asked to provide false testi-mony, had not done so, and never conspired or agreed with others to offer false testimony.

We conclude that both Gutierrez and Noyes produced evidence establishing their good faith. To review, Gutierrez testified that he issued warrants on the basis of information that (1) Ritz had reported the theft of computer software; (2) Robertson had reported a break-ing or entering and larceny from the warehouse or commercial area; (3) Noyes had previously warned Plaintiffs that they faced trespass-ing charges if they returned to the property; (4) nurses employed by the medical practice reported that the Plaintiffs had forcefully entered the warehouse on 14 September 2002, refused to leave when asked, and removed items from the building, (5) Plaintiffs were observed following or "stalking" employees of 218 Anna Lewis Road, and; (6) Plaintiffs were seen parked across the road watching the warehouse and commercial building.

Gutierrez testified that he had never met the Plaintiffs, had no personal relationship with Hedrick, and had never discussed the case with Hedrick. Regarding Noyes, the undisputed evidence showed that Noyes had no previous history of conflict with the Plaintiffs, and that his personal interaction with them was confined to the 30 August 2002 warehouse incident and an alleged conversation with Ms. Strickland later that evening. Noyes' involvement after 30 August 2002 was limited to routine police procedures, such as discussing the case with Gutierrez and conducting a few interviews. Neither Noyes nor Gutierrez participated in Plaintiffs' arrest, neither one testified in court, and each testified that he was not even notified when Plaintiffs were tried for trespass in district court.

Moreover, Noyes and Gutierrez both offered sworn testimony that their actions were taken in good faith, and strongly denied any conspiracy, use of false testimony, or other improper actions. Defendants Noyes, Gutierrez, Robertson, Ritz, and Hedrick each

denied unequivocally being asked by Hedrick or anyone else to provide "false testimony"; denied conspiring or agreeing to bring false claims against Plaintiffs, and denied making any false statements to law enforcement officers or others about this matter.

Plaintiffs dismiss Defendants' evidence as an "attempt to use [their] self-serving testimony to establish a lack of malice or corrupt motive[.]" However, Plaintiffs cite no authority for the proposition that a party may not rely on his sworn testimony regarding an issue. *See, e.g., Middleton v. Myers*, 299 N.C. 42, 46, 261 S.E.2d 108, 111 (1980) (affirming entry of summary judgment on malicious prosecution where defendant's "affidavit averred that the prosecution of the plaintiff was instigated in good faith . . . and the plaintiff failed to present counter-affidavits or other evidence creating factual issues"). We conclude that these Defendants bolstered the presumption of good faith with evidence and are entitled to the affirmative defense of governmental immunity on Plaintiffs' claims against them.

"An adequately supported motion for summary judgment triggers the opposing party's responsibility to come forward with facts, as distinguished from allegations, sufficient to indicate he will be able to sustain his claim at trial." *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981) (citations omitted). The Plaintiffs failed to produce such evidence.

Plaintiffs' deposition testimony largely corroborated that of the Defendants. Mary Jane Strickland testified that she rented space from Hedrick in 2002 to operate a sign business, and that Plaintiffs stored items in a warehouse on the premises. In August 2002 Plaintiffs owed Hedrick money for back rent. They sold the business to Ritz effective 1 August 2002, including everything at the sign shop except Plaintiffs' personal items. Ms. Strickland admitted that on 29 August 2002 Hedrick told Plaintiffs he had changed the lock to the warehouse, and that when they returned the next night Hedrick would not let them into the warehouse and called the police. When the law enforcement officers arrived, Hedrick told Noyes that Plaintiffs had stolen $30,000 worth of software from Ritz, and that he had locked them out of the warehouse for not paying rent. In Noyes' presence, Ritz also accused Plaintiffs of stealing his software.

Ms. Strickland further conceded that Plaintiffs did not have permission to be on the premises after 30 August 2002, and that when she and her son entered the warehouse area on 14 September 2002, the medical office employees "screamed" at them to leave. She admit-

ted having no "concrete evidence" of a conspiracy, and no "concrete evidence" against Robertson, Welch, Noyes, Lollis, or Gutierrez. Ms. Strickland agreed that Plaintiffs had no dealings with Noyes after 30 August 2002 and that she had no evidence that the police "knew" the charges were false. Regarding Hedrick, Ms. Strickland agreed that Plaintiffs were commercial tenants, that Hedrick told them to leave on 30 August 2002, and that she "assumed he didn't want us in there" after that date. She had no evidence about conversations Hedrick may have had with others. After the 30th, Ms. Strickland never contacted Hedrick about the money they owed him.

Plaintiff Steven Strickland testified that on 29 August 2002 Hedrick told them the warehouse keys were changed. On 30 August Hedrick would not let them enter the warehouse, called the police, and in Noyes' presence accused Plaintiffs of stealing Ritz's software worth $30,000. He conceded that when he entered the warehouse on 14 September, an employee "started shouting and screaming" for them to leave, but that they stayed for about five minutes and removed some personal items. Steven Strickland testified that their only evidence against Gutierrez was that his name was on the warrant. When questioned by defense counsel, Steven Strickland could not identify any evidence of a conspiracy. Plaintiffs both testified that on 20 September they were questioned by law enforcement officers, who told them that Hedrick had reported a break in at the sign shop, and was angry at them for returning to the warehouse on 14 September.

Plaintiffs proffered no evidence of actions by these officers outside the scope of their employment, no evidence of corruption, and no evidence supporting their contention that the warrants were issued upon false testimony. Their sole example of impropriety is an allegation that Noyes was vulgar and hostile towards them on 30 August 2002. Noyes did not sign or issue the warrants, did not arrest Plaintiffs, and did not attend the trial. Indeed, Noyes never saw the Plaintiffs after 30 August 2002. No factual evidence contradicts Noyes' testimony denying all the pertinent allegations of Plaintiffs' complaint. However, Plaintiffs assert that when Noyes came to the warehouse on 30 August 2002, he urged Hedrick to demand the full amount Plaintiffs owed him, warned Plaintiffs that they would face jail if they did not pay Hedrick, and compared Plaintiffs to "a bag of dog poop." This contention, even if true, would tend to show that Noyes used inappropriate language, but does not constitute legal malice. We conclude that Plaintiffs failed to rebut either the presumption

that these law enforcement officers acted in good faith, or the evidence that Defendants presented. Therefore, Officers Noyes and Gutierrez were entitled to summary judgment.

Plaintiffs also failed to offer any evidence of corruption or malice by Officer Lollis or the City of Lexington; the claims against these Defendants are based on vicarious liability for the torts of the other officers. Our determination that Noyes and Gutierrez are entitled to summary judgment necessarily defeats Plaintiffs' claims of vicarious liability.

We have considered and rejected Plaintiffs' arguments to the contrary. Plaintiffs stress that the police received several different reports that Plaintiffs either trespassed at the warehouse, broke into the building, or stalked tenants of the building. They also note that law enforcement officers discussed the case, interviewed several people, and that their notes refer to Hedrick. However, Plaintiffs fail to articulate why this is not routine police procedure. Plaintiffs assert that the officers' search for the missing software on 30 August 2002 is proof that they "knew" the charges were false. To the contrary, if the software were stolen, it is reasonable that it would have been removed from the building. Plaintiffs direct our attention to inconsistencies in the break-in dates given to law enforcement officers by Hedrick, Ritz, Robertson, and the medical office employees. However, information received by law enforcement officers uniformly indicated that Plaintiffs returned to the commercial property several times after being told to stay away; that on at least one occasion Plaintiffs entered the warehouse and removed items; and that Ritz reported that Plaintiffs had stolen his computer software. In this context, law enforcement officers chose not to resolve all the factual details regarding the sequence of events before issuing warrants. This discretionary decision is not evidence of malicious prosecution.

Plaintiffs also attempt to rely on the assertions in their complaint. However, "Rule 56(e) clearly states that the unsupported allegations in a pleading are insufficient to create a genuine issue of fact where the moving adverse party supports his motion by allowable evidentiary matter showing the facts to be contrary to that alleged in the pleadings." *Lowe v. Bradford,* 305 N.C. 366, 370, 289 S.E.2d 363, 366 (1982).

[2] We conclude that Plaintiffs failed to offer evidence demonstrating a genuine issue of material fact on the issue of the municipal Defendants' entitlement to the defense of governmental immunity on

the claim of malicious prosecution. Accordingly, these Defendants were entitled to entry of summary judgment in their favor. We further conclude that the municipal Defendants were entitled to summary judgment on the separate basis that Plaintiffs cannot prove the absence of probable cause for their arrests, which is an essential element of a malicious prosecution claim.

"Plaintiff must establish four elements to support a malicious prosecution claim: (1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) (citations omitted). "The test for determining probable cause is 'whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation.' " *Becker v. Pierce*, 168 N.C. App. 671, 677, 608 S.E.2d 825, 829-30 (2005) (quoting *Wilson v. Pearce*, 105 N.C. App. 107, 113-14, 412 S.E.2d 148, 151 (1992)) (internal citation omitted). "The critical time for determining whether or not probable cause existed is when the prosecution begins." *Hill v. Winn-Dixie Charlotte, Inc.*, 100 N.C. App. 518, 521, 397 S.E.2d 347, 349 (1990) (citing *Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 318, 317 S.E.2d 17, 19 (1984)).

In the instant case, undisputed evidence establishes that:

1. In 2002 Ms. Strickland and Hedrick executed a commercial lease under which Plaintiffs rented space in a commercial building from Hedrick. In August 2002 Plaintiffs were delinquent in their rent payments and owed Hedrick money.

2. During the time Plaintiffs were renting from Hedrick, they left personal items in part of a warehouse on the property. A medical practice used the rest of the warehouse area as a medical records storage facility.

3. Plaintiffs sold their sign business to Ritz in August 2002. He assumed the lease effective 1 August 2002 and took possession 15 August 2002.

4. On 29 August 2002 Hedrick told Plaintiffs he had changed the locks on the warehouse. On 30 August 2002 Plaintiffs tried to get in the warehouse, but Hedrick refused to allow them access and called the police. Officer Noyes was among the officers who came to the warehouse.

5. On 29 August 2002 Ritz reported to the police that Plaintiffs had stolen software. On 30 August 2002 Hedrick accused Plaintiffs, in Noyes' presence, of stealing Ritz's computer software.

6. On 14 September 2002 Plaintiffs drove to the property and entered the warehouse through the medical records storage area. Employees of the medical practice told them to leave, but Plaintiffs remained about five minutes and removed items from the building.

7. On 20 September 2002 law enforcement officers told Plaintiffs that Hedrick had reported a break in at the commercial or warehouse space that day, and that Hedrick knew Plaintiffs had entered the warehouse on 14 September.

8. Warrants were issued after the police received several reports that Plaintiffs broke into the warehouse, had stolen software, and had trespassed on the property.

" 'Probable cause' . . . 'refers to the existence of a reasonable suspicion in the mind of a prudent person, considering the facts and circumstances presently known.' Thus, to establish probable cause, 'the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith.' " *State v. Bullin*, 150 N.C. App. 631, 638, 564 S.E.2d 576, 582 (2002) (quoting *State v. Sturdivant*, 304 N.C. 293, 298, 283 S.E.2d 719, 724 (1981); and *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973)).

The uncontradicted evidence is sufficient to show that the warrants were issued upon probable cause. Moreover, even without the affidavits and deposition evidence, the allegations of Plaintiffs' own complaint are sufficient to charge Plaintiffs with 2nd degree trespass and felonious breaking or entering and larceny.

The existence of probable cause is not negated by the fact that the charges were ultimately dismissed. "[T]he acquittal of a defendant by a court of competent jurisdiction does not make out a *prima facie* case of want of probable cause." *Hawkins v. Hawkins*, 32 N.C. App. 158, 161, 231 S.E.2d 174, 175 (1977) (citing *Carson v. Doggett*, 231 N.C. 629, 58 S.E.2d 609 (1950)). We conclude that there was no issue of material fact regarding the existence of probable cause for the arrest. Plaintiffs' failure to produce evidence on this issue is a separate basis for the Defendants' entitlement to summary judgment.

[3] Defendants also were entitled to summary judgment on the claim of conspiracy. "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989) (citations omitted).

Plaintiffs complaint states that the Defendants "conspired together to commit the unlawful acts of having Plaintiffs falsely arrested" and asserts that Defendants "knowingly provid[ed] false and misleading affidavits and other false information in order to secure the issuance of the bogus arrest warrants." If we interpret this to allege a conspiracy to provide false testimony in order to secure Plaintiffs' arrest, then Defendants are entitled to dismissal or entry of summary judgment on the grounds that this claim is not recognized in North Carolina. *See Hawkins v. Webster*, 78 N.C. App. 589, 592, 337 S.E.2d 682, 684 (1985) ("A civil action may not be maintained for a conspiracy to give false testimony."). "Perjury and subornation of perjury are criminal offenses[; however] . . . a civil action in tort cannot be maintained upon the ground that a defendant gave false testimony or procured other persons to give false or perjured testimony." *Brewer v. Carolina Coach*, 253 N.C. 257, 260, 116 S.E.2d 725, 727 (1960).

If we construe the claim as alleging conspiracy to commit malicious prosecution, it is still subject to dismissal. Because we conclude that Defendants are entitled to summary judgment on Plaintiffs' claim of malicious prosecution, the ancillary claim for conspiracy to commit malicious prosecution must also fail:

> It is well established that "there is not a separate civil action for civil conspiracy in North Carolina." . . . Plaintiff argues that civil conspiracy should attach to . . . plaintiff's claims for . . . [malicious prosecution]. As we have held that summary judgment for defendants on these claims was proper, plaintiff's claim for civil conspiracy must also fall.

*Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007) (quoting *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005)).

Because we conclude that the municipal Defendants are entitled to summary judgment, we do not reach their other arguments.

Plaintiffs' Appeal

**[4]** Plaintiffs argue first that the trial court erred by granting Ritz's motion for dismissal under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2007). We disagree.

In its order the court stated in pertinent part that:

. . . [T]he Court finds that plaintiffs complaint fails to state a claim for relief against the Defendant LARRY RITZ.

. . . Regarding Count I alleging Conspiracy, the Court . . . finds that the allegations set forth are insufficient to state a claim against Ritz . . . [and] claims based upon said acts are barred by the applicable statutes of limitation.

Regarding Count II alleging Malicious Prosecution, . . . the Complaint alleges that defendant RITZ testified in Plaintiffs' favor at the criminal proceedings, which Plaintiffs allege were terminated in Plaintiffs' favor on February 11, 2003, and the Court finds, in its discretion, that the Complaint fails to state [a] claim of malicious prosecution . . . against Defendant RITZ.

"When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true." *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) (citation omitted). "A motion to dismiss pursuant to Rule 12(b)(6) should not be granted '*unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*'" *Isenhour v. Hutto*, 350 N.C. 601, 604-05, 517 S.E.2d 121, 124 (1999) (quoting *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970)).

However, "[t]o prevent a Rule 12(b)(6) dismissal, a party must . . . 'state enough to satisfy the substantive elements of at least some legally recognized claim.'" *Hewes v. Johnston*, 61 N.C. App. 603, 604, 301 S.E.2d 120, 121 (1983) (quoting *Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 378, 265 S.E.2d 890, 909 (1980) (internal citation omitted)). Additionally, we "are not required . . . 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).

On appeal, Plaintiffs contend that "ample facts demonstrate Defendant Ritz's deep involvement in bringing knowingly false charges" against Plaintiffs. However, their argument is based on evidence outside the pleadings. In ruling on a motion for dismissal under Rule 12(b)(6), the trial court considers only the pleadings. N.C. Gen. Stat. § 1A-1, Rule 12(b) ("If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]"). *See also, e.g., Peterkin v. Columbus County Bd. of Educ.*, 126 N.C. App. 826, 828, 486 S.E.2d 733, 735 (1997) ("only matters contained in the pleadings are considered in a 12(b)(6) motion to dismiss"). Accordingly, in our review we do not consider evidence outside the pleadings.

We first determine whether the allegations of Plaintiffs' complaint state a claim for malicious prosecution against Ritz. "To recover for malicious prosecution the plaintiff must show that defendant initiated the earlier proceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in plaintiff's favor." *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E.2d 611, 625 (1979) (citations omitted).

As discussed above, the allegations of Plaintiffs' complaint admit that: (1) in August 2002 Plaintiffs owed Hedrick money for rent; (2) Plaintiffs sold their business to Ritz, who assumed the lease effective 1 August 2002; (3) Plaintiffs stored personal items in part of a warehouse on the same property as the commercial office they rented; (4) a medical practice used the rest of the warehouse area as a separately enclosed medical records storage facility; (5) on 29 August 2002 Hedrick told Plaintiffs he had changed the locks to the warehouse space and demanded the rent money Plaintiffs owed; (6) on 30 August 2002 Hedrick refused to allow Plaintiffs in the warehouse and called the police; (7) Noyes was among the officers who came to the warehouse, and in Noyes' presence, Hedrick and Ritz accused Plaintiffs of stealing Ritz's computer software; (8) on 14 September 2002 Plaintiffs entered the warehouse through the medical records storage area, remained about five minutes, and removed items from the building, and; (9) on 20 September 2002 law enforcement officers told Plaintiffs that Hedrick had reported that Plaintiffs broke into the sign shop and stole $30,000 worth of software, and that Hedrick was angry that Plaintiffs had been in the warehouse on 14 September.

STRICKLAND v. HEDRICK

[194 N.C. App. 1 (2008)]

We conclude that the allegations of Plaintiffs' complaint reveal that they cannot prove the lack of probable cause, which is an element of their claim for malicious prosecution. Moreover, Plaintiffs' complaint does not state any claims against Ritz individually. We reject Plaintiffs' contention that generalized allegations that Hedrick acted with "one or more" other defendants are sufficient to state a claim against Ritz. The allegations of Plaintiffs' complaint generally establish the existence of probable cause to charge Plaintiffs with 2nd degree trespass and felonious breaking or entering and larceny, and Plaintiffs allege no factual basis for a specific claim against Ritz. We conclude that Plaintiffs' allegations that "one or more" Defendants committed these torts is fails to state a claim against Ritz in particular, and that the trial court properly dismissed Plaintiffs' claim of malicious prosecution against Ritz.

We also conclude that the trial court properly dismissed Plaintiffs' claim against Ritz for civil conspiracy. We first note that Plaintiffs' complaint does not allege an agreement between Ritz and any other Defendant. " 'The existence of a conspiracy requires proof of an agreement between two or more persons.' . . . [Plaintiffs] failed to allege, however, that there was an agreement [among the Defendants]. . . . [T]he trial court properly dismissed plaintiff's claim for civil conspiracy." *Dove v. Harvey*, 168 N.C. App. 687, 690-91, 608 S.E.2d 798, 801 (2005) (quoting *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991)).

As discussed above, (1) North Carolina does not recognize a claim of conspiracy to commit perjury or to offer false testimony, and; (2) Plaintiffs' conspiracy claim cannot depend upon a malicious prosecution claim that was properly dismissed. We conclude that the trial court properly dismissed Plaintiffs' claims against Ritz for both malicious prosecution and civil conspiracy. We reject the Plaintiffs' argument that the court's order must be reversed because the trial court employed the phrase "in its discretion" in the order. "[Plaintiffs] insist[] . . . an improper legal standard was applied. Assuming arguendo that the trial court's reasoning . . . was incorrect, we are not required on this basis alone to determine that the ruling was erroneous. . . . The question for review is whether the ruling of the trial court was correct[.]" *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (1987) (citations omitted). This assignment of error is overruled.

**[5]** Plaintiffs next argue that the trial court erred by granting Defendant Hedrick's summary judgment motion, on the grounds that there are genuine issues of material fact regarding the claims of conspiracy, malicious prosecution, conversion, and unfair and deceptive trade practices. We disagree.

Hedrick offered an affidavit and sworn deposition testimony, summarized in pertinent part as follows: Hedrick owns the buildings at 218 Anna Lewis Drive, in Lexington, North Carolina. In 2002 he rented commercial space to Plaintiffs, beginning 1 January 2002. He allowed Plaintiffs to leave personal possessions in part of the warehouse area, but did not lease warehouse space to Plaintiffs. In July 2002 Strickland asked to rent the warehouse space, but Hedrick did not agree because she already owed several months back rent. When Ritz assumed the lease, Hedrick changed the warehouse locks.

After Plaintiffs sold their business to Ritz, they no longer held a lease to any part of Hedrick's property, and during August 2002 Hedrick told Plaintiffs several times to remove any personal possessions from the warehouse. When Plaintiffs failed to remove their possessions in a timely manner, Hedrick locked Plaintiffs out of the warehouse and refused to allow them back in unless they paid the money they owed him for rent. On 30 August 2002 Plaintiffs came to the warehouse and demanded access to the warehouse. Hedrick summoned the police, who told Plaintiffs to leave or face arrest for trespassing. Hedrick also told the Plaintiffs not to return. Ritz had told Hedrick that his computer software was missing.

In September 2002, an employee of the medical practice told Hedrick that Plaintiffs had barged into the warehouse on 14 September 2002, shoving her aside. He was also informed by a tenant of the property that another break-in took place on 20 September 2002. Hedrick denied asking anyone to provide false testimony, conspiring to have Plaintiffs arrested, asking Defendants to issue "bogus warrants" or otherwise acting improperly with regard to the charges against Plaintiffs. Hedrick did not sign the arrest warrants, was not notified when the case was in court, and did not testify at Plaintiffs' trial.

Other evidence includes Plaintiffs' Exhibit 1, their lease with Hedrick. The lease is titled "Commercial Lease" and its terms provide in relevant part that:

1. The parties agree to a one year lease of an "office with bay" beginning 1 January 2002.

2. The lease does not include rental of warehouse space. Handwritten notes indicate that on 9 July 2002 the parties "consulted" about the warehouse.

3. As lessee, Ms. Strickland could not assign the lease or sublet the premises without prior written permission from Hedrick, the lessor.

4. Lessee's failure to pay rent is an "event of default" and entitles lessor to terminate the lease.

5. Termination of the lease does not bar lessor from collecting rent owed at the time of termination.

6. Upon lessee's abandonment of the premises, any personal property lessee leaves behind may be considered abandoned and is available to the lessor to use or sell.

7. The lease is the entire agreement between the parties and "may not be modified except by a writing signed by all the parties thereto."

Plaintiffs have claimed a right of entry into the warehouse area. However, the lease corroborates Hedrick's testimony that he did not lease any part of the warehouse to Plaintiffs, and that their brief discussion about the warehouse in July 2002 did not result in any modification of the terms of the lease. Plaintiffs did not produce a signed modification to the lease, an amended lease, or any documentation supporting their claim of a "leasehold" over the warehouse.

Plaintiffs concede that in July 2002 they owed several months rent to Hedrick; that Ritz assumed the lease effective 1 August 2002; and that Ms. Strickland did not obtain Hedrick's permission before transferring the lease to Ritz. Plaintiffs do not dispute that they had access to the commercial office and the warehouse for several weeks after Ritz bought the business, and did not contradict Hedrick's testimony that he told them several times during August 2002 that they were no longer tenants and had to remove their personal belongings from the building. Hedrick's testimony established that Plaintiffs: (1) defaulted on the obligation to pay monthly rent; (2) unilaterally transferred the lease without permission, effective 1 August 2002, and; (3) had not removed their personal belongings from the building by 29 August 2002. Plaintiffs did not dispute any of these facts. It is also uncontradicted that 30 August 2002 was the only occasion on which Hedrick called the police on his own behalf, as opposed to passing on

information obtained from his tenants. "The act of giving honest assistance and information to prosecuting authorities does not render one liable for malicious prosecution." *Williams v. Kuppenheimer Manufacturing Co.*, 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992) (citations omitted).

We conclude that Plaintiffs produced no evidence that Hedrick asked the police to arrest Plaintiffs, gave a sworn statement in the case, spoke with the district attorney, filed an official complaint, or otherwise acted to initiate charges against Plaintiffs, and that the trial court did not err in granting summary judgment for Hedrick. The entry of summary judgment on Plaintiffs' claim of malicious prosecution renders moot their claim for civil conspiracy to engage in malicious prosecution. The pertinent assignments of error is overruled.

---

**[6]** Plaintiffs also argue that the trial court erred by entering summary judgment for Hedrick on their claims of unfair or deceptive trade practices and conversion. We disagree.

Plaintiffs' conversion and abuse of process claims against Hedrick were dismissed on 19 June 2006. Plaintiffs did not appeal this order. " 'Without proper notice of appeal, the appellate court acquires no jurisdiction and neither the court nor the parties may waive the jurisdictional requirements even for good cause shown under Rule 2.' " *State ex rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 642, 624 S.E.2d 371, 379 (2005) (quoting *Sillery v. Sillery*, 168 N.C. App. 231, 234, 606 S.E.2d 749, 751 (2005)) (citation omitted). The dismissal of Plaintiffs' conversion claim is not properly before us, and this assignment of error is overruled.

In support of their claim for unfair or deceptive trade practices, Plaintiffs assert that Hedrick charged an "exorbitant" rent. However, Plaintiffs neither alleged this in their complaint nor produced any evidence on this issue, and we do not consider it. Plaintiffs also direct our attention to the allegations in their complaint. As discussed above, Plaintiffs cannot rely on their complaint to defeat a properly supported summary judgment motion. Plaintiffs further contend that Hedrick made false allegations of trespass and theft against them. Plaintiffs failed to proffer evidence in support of these assertions. We conclude that the trial court did not err by granting summary judgment for Hedrick on the claim for unfair or deceptive trade practices. This assignment of error is overruled.

---

**[7]** Finally, Plaintiffs attempt to appeal from the 22 May 2006 dismissal of their claims against the municipal defendants under 42 U.S.C. § 1983, for violation of their constitutional rights. We conclude that their appeal of this order is not properly before us.

In their complaint, Plaintiffs brought claims against the municipal Defendants for violation of unspecified Constitutional rights, pursuant to 42 U.S.C. § 1983 (2007). On 22 May 2006 Judge Spivey dismissed Plaintiffs' § 1983 claims, and on 22 June 2006 Plaintiffs filed notice of appeal from this order. On 15 September 2006 the trial court dismissed Plaintiffs appeal from the 22 May 2006 order as untimely. On 6 December 2007 Plaintiffs filed a second notice of appeal from the 22 May 2006 order.

It is well established that

> Under Rule 3(a) of the North Carolina Rules of Appellate Procedure, any party entitled by law to appeal from a judgment . . . may take appeal by filing notice of appeal . . . Appellate Rule 27(c) provides in pertinent part: "Courts may not extend the time for taking an appeal . . . prescribed by these rules or by law." Appellate Rule 21(a)(1) provides: "The writ of *certiorari* may be issued . . . by either appellate court to permit review of the judgments . . . of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action." . . . Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by *certiorari* even if the party has failed to file notice of appeal in a timely manner.

*Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997).

Plaintiffs lost the right to appeal by failing to timely file notice of appeal, and have not filed a petition seeking *certiorari*. "The jurisdictional requirements of N.C.R. App. P. 3(d) may not be waived by this Court, even under the discretion granted by N.C.R. App. P. 2." *Fearrington v. University of North Carolina*, 126 N.C. App. 774, 778, 487 S.E.2d 169, 172 (1997) (citations omitted). Plaintiffs' appeal from the order of 22 May 2006 is dismissed.

For the reasons discussed above, we reverse the court's denial of the municipal Defendants summary judgment motion and remand for entry of summary judgment in favor of Officers Noyes, Gutierrez, Lollis, and the City of Lexington; dismiss Plaintiffs' appeal from the order of 22 May 2002; affirm the trial court's dismissal of Plaintiffs'

CASTANEDA v. INTERNATIONAL LEG WEAR GRP.

[194 N.C. App. 27 (2008)]

claims against Ritz; and affirm the court's order for summary judgment in favor of Hedrick.

Affirmed in part, Dismissed in part, Reversed and Remanded in part.

Judge BRYANT concurs.

Judge WYNN concurs in the result only.