## ALLMOND v. GOODNIGHT

[230 N.C. App. 413 (2013)]

GERALD ALLMOND, AS ADMINISTRATOR OF THE ESTATE OF
SANDRA GAIL ALLMOND, PLAINTIFF
v.
JAMES D. GOODNIGHT, INDIVIDUALLY AND JAMES D. GOODNIGHT, IN HIS CAPACITY AS A
MEMBER OF THE NORTH CAROLINA HIGHWAY PATROL, DEFENDANT

GERALD ALLMOND, AS GUARDIAN AD LITEM FOR ELIJAH ALLMOND, A MINOR, PLAINTIFF
v.
JAMES D. GOODNIGHT, INDIVIDUALLY AND JAMES D. GOODNIGHT, IN HIS CAPACITY AS A
MEMBER OF THE NORTH CAROLINA HIGHWAY PATROL, DEFENDANT

No. COA12-1270

Filed 19 November 2013

1. **Appeal and Error—interlocutory orders and appeals—summary judgment—public official immunity—substantial right**

    Orders denying summary judgment based on public official immunity affect a substantial right and are immediately appealable.

2. **Immunity—state trooper—auto accident—public official immunity—summary judgment**

    The trial court did not err by denying summary judgment for defendant, a state trooper, in a traffic accident case where defendant drove 120 mph in a 55 mph zone and struck an automobile making a legal left turn, cutting it in half and killing two people. Defendant maintained that he was pursuing a speeder and claimed public official immunity, but some witnesses saw the speeder and some did not. Plaintiff was required to allege one of the "piercing" exceptions to the public official immunity; although plaintiffs did not specifically state that defendant was acting outside the scope of his official duties, the relevant language in plaintiffs' compliant could not be read any other way.

3. **Immunity—public official—traffic accident—state trooper**

    Plaintiffs' evidence in a traffic accident case involving a state trooper was sufficient to overcome the state trooper's motion for summary judgment. The trooper relied upon public official immunity and its presumption of good faith and lawful conduct.

4. **Collateral Estoppel and Res Judicata—traffic accident—state trooper—sued in individual and official capacities**

    The trial court did not err by refusing to hold that plaintiffs were judicially estopped from asserting their claims against

defendant state trooper in his individual capacity where defendant was involved in a traffic accident and was sued in both his individual and official capacities.

Appeal by defendant from orders entered 19 April and 18 May 2012 by Judge Robert S. Albright in Guilford County Superior Court. Heard in the Court of Appeals 27 March 2013.

*Abrams & Abrams, P.A., by Douglas B. Abrams, Margaret S. Abrams, and Noah B. Abrams; Davis Law Group, P.A., by Brian F. Davis, for Plaintiffs-Appellees.*

*Roberts & Stevens, P.A., by Wyatt S. Stevens and Ann-Patton Hornthal, for Defendant-Appellant.*

ERVIN, Judge.

Defendant James L. Goodnight appeals from orders denying his motions for the entry of summary judgment in his favor and to reconsider the denial of his summary judgment motions. More specifically, Defendant contends that the trial court erred by denying his summary judgment and reconsideration motions on the grounds that the claims that had been asserted against him in his individual capacity by Gerald Allmond, in both his capacity as administrator of the estate of Sandra Gail Allmond and as guardian *ad litem* for his son, Elijah Allmond, were barred by the doctrines of public official immunity and judicial estoppel. After careful consideration of Defendant's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be affirmed.

## I. Factual Background

### A. Substantive Facts

After attending church on 23 May 2010, Ms. Allmond decided to take her grandson, Elijah Allmond; Taylor Strange; and Steven Strange home and did so by heading northbound on Business 85 near High Point. The weather in the area was sunny and clear and traffic was light as Ms. Allmond drove north.

On the same, morning, Defendant, who had served as a trooper with the North Carolina State Highway Patrol since 2000, was on duty and traveling north on Business 85 in his marked 2009 Dodge Charger. At some point, however, Defendant subsequently turned his vehicle

around and began traveling in a southbound direction. As he drove south, Defendant accelerated to a speed which exceeded 120 miles per hour. Although he activated his emergency lights when he accelerated, Defendant did not sound his siren. At the location at which Defendant accelerated, the speed limit on Business 85 was 55 miles per hour.

As she neared Defendant's location, Ms. Allmond entered the left turn lane and began making a left turn from Business 85 onto River Road at an intersection in which the traffic signal was green for both northbound and southbound traffic. Before Ms. Allmond could complete her turn, Defendant's vehicle entered the intersection at a high rate of speed. Despite his efforts to swerve in order to avoid an accident, Defendant's car collided with Ms. Allmond's vehicle with such force that the portion of her vehicle in front of the dashboard was severed from the remainder of the vehicle. Ms. Allmond and Taylor Strange died and Elijah Allmond was injured as a proximate result of the accident.

Defendant testified that, as he was traveling northbound on Business 85, he noticed a vehicle which he clocked at 80 miles per hour heading southbound in a 55 mile per hour zone. However, Defendant lost sight of the vehicle after it passed him. Instead of crossing the median in order to pursue the speeding vehicle, Defendant continued up the road and turned at a paved crossover given that recent rains had impaired his ability to cross the grassy median safely. While pursuing the speeding vehicle, Defendant saw a truck driven by Terry Wayne Johnson in the right lane. As he approached Mr. Johnson's truck, Defendant moved into the left lane and sped up in order to catch the speeder. Further along, Defendant passed a second truck driven by Michael Wayne Perry. Defendant reached a speed of 121 miles per hour 2.1 seconds before the accident. As Defendant approached the intersection between Business 85 and River Road, he observed Ms. Allmond's vehicle coming from the opposite direction in the left turn lane and beginning to turn in front of him. Defendant began applying his brakes 1.6 seconds before the time of impact.

Mr. Perry testified that he was heading southbound on Business 85 in a white pickup truck with his cruise control set between 55 and 60 miles per hour shortly before the accident. According to Mr. Perry, he was passed by a dark-colored speeding vehicle shortly after going by the Vickery Chapel Road exit. As the speeding vehicle passed, Mr. Perry thought, "where is a trooper when you need one." At that moment, he saw Defendant, who was traveling in a northbound direction, turn around and begin to drive southbound. Eventually, Defendant passed Mr. Perry in the left lane with his emergency lights activated. As Defendant went

by, Mr. Perry noticed through his rearview mirror a Dodge pickup truck traveling in the same direction that he and Defendant were proceeding. As the accident between Defendant and Ms. Allmond occurred, Mr. Perry observed the dark-colored speeding vehicle heading over a hill in the distance. After the accident, Mr. Perry pulled over to the side of the road and called for emergency assistance.

According to Theodis Duff, who was traveling in a southbound direction on Business 85, his son noticed a light blue car approaching them from the rear at an excessive rate of speed while darting in and out of traffic in a dangerous manner. Although the speeding vehicle continued past him toward the direction in which the wreck occurred, Mr. Duff eventually lost sight of it and did not know where the light blue vehicle eventually went. Even though Mr. Duff did not witness the collision between Ms. Allmond and Defendant, he did come upon the debris left by the two vehicles involved in the wreck shortly thereafter.

Floyd Ross saw the light at the intersection at which the accident occurred turn green as he traveled south on Business 85 on the morning of the accident between Defendant and Ms. Allmond. At that point, Mr. Ross' attention was diverted by flashing blue lights emanating from some type of emergency vehicle. However, he did not hear any siren or other audible signal that an emergency vehicle was approaching. Although he was not looking for any speeding vehicle, Mr. Ross believed that he would have noticed a speeding vehicle if one had passed him, in light of the good view he had as the result of the fact that he was seated high in his truck, and explicitly stated that he had not noticed a speeding vehicle pass him that morning.

Mr. Ross did not notice Ms. Allmond's vehicle until after the accident had occurred. At that point, Mr. Ross approached Ms. Allmond's vehicle and used his knife to cut the seatbelt of the front passenger in an attempt to assist her. Subsequently, Mr. Ross went to check on Defendant, who had to climb out of the passenger side in order to exit his vehicle. At or immediately after the time that he exited his vehicle, Defendant asked Mr. Ross why Ms. Allmond had not seen his lights and inquired if Mr. Ross had seen them.

Mr. Johnson, who was driving his vehicle south on Business 85 at the posted speed limit on the morning of the accident, entered the highway from Vickery Chapel Road, which was less than a mile away from River Road, and did not notice any cars pass him prior to the accident other than the marked patrol vehicle operated by Defendant. Mr. Johnson testified that he "would have never seen" a speeding vehicle because

it would have been out of his line of vision if it had been traveling at a high speed. As Mr. Johnson turned into the right lane of Business 85, he observed Defendant's vehicle in a stationary position at the median. After Mr. Johnson went past Defendant at a location approximately one half mile from the intersection of Business 85 and River Road, he observed Defendant pull behind him in the right lane while traveling 55 miles per hour. Although Defendant denied having ever paused behind Mr. Johnson, Mr. Johnson estimated that Defendant was behind his car for approximately twenty seconds, during which time Mr. Johnson assumed that Defendant had been checking his license tags. Mr. Johnson did not sense any urgency on Defendant's part at the time that Defendant was behind him.

According to Mr. Johnson, Defendant suddenly pulled out into the left lane of Business 85, accelerated rapidly, and activated his blue lights as he reached a point about three car lengths in front of Mr. Johnson and about 1,000 feet from the intersection at which the accident occurred. As Ms. Allmond attempted to make a left turn, Defendant's vehicle ran into the side of her car, ripping it in half. After the accident, Mr. Johnson went to the vehicle driven by Ms. Allmond, where he found Ms. Allmond and her front seat passenger in an unconscious condition and two hysterical young boys in the back seat.[1] Ms. Allmond died in Mr. Johnson's arms.

Steven H. Farlow, an accident reconstruction expert, visited the scene of the collision between Defendant and Ms. Allmond a little over a month after the accident. According to Mr. Farlow, Mr. Johnson's version of the events that occurred shortly prior to the accident could be accurate depending on the manner in which one interpreted Mr. Johnson's testimony. For example, Mr. Farlow stated that the timetable spelled out in Mr. Johnson's account of the events leading up to the accident was physically possible in the event that, even if he passed Mr. Johnson at the 1,000 foot marker, Defendant began accelerating prior to reaching that point. Mr. Farlow also testified that Mr. Johnson's version of events could be possible if Defendant had not passed him at exactly the 1,000 foot mark or if Mr. Farlow used a less conservative acceleration rate for his calculation.

## B. Procedural History

On 27 May 2011, Mr. Allmond, acting in his capacity as the administrator of Ms. Allmond's estate, filed a complaint seeking to recover

---

1. In his deposition, Elijah testified that he did not see a speeding vehicle heading in the opposite direction from the car in which he was riding before the accident other than Defendant's patrol vehicle.

ALLMOND v. GOODNIGHT

[230 N.C. App. 413 (2013)]

compensatory and punitive damages from Defendant in both his official and individual capacities stemming from Ms. Allmond's death. On 29 July 2011, Mr. Allmond, acting in his capacity as Elijah's guardian *ad litem*, filed a substantially identical complaint seeking to recover compensatory and punitive damages from Defendant in both his official and individual capacities as a result of the injuries which Elijah sustained. On 25 July 2011, Defendant filed an answer in the wrongful death action in which he denied the material allegations of the complaint and sought dismissal of the complaint on sovereign immunity and public official immunity grounds. On 15 August 2011, Defendant filed an answer in the personal injury case which was substantially similar to the one which he had filed in the wrongful death action coupled with a motion to consolidate the wrongful death and personal injury cases. On 27 September 2011, Defendant filed a third party claim against Ms. Allmond's estate in the personal injury case, alleging that, in the event that he was found liable in the personal injury action, Defendant was entitled to contribution from the estate on the grounds that the accident in which Elijah was injured resulted from Ms. Allmond's negligence.

On 11 October 2011, Judge L. Todd Burke entered an order allowing Defendant's motion to dismiss the claims that had been lodged against him in his official capacity while denying Defendant's motion to dismiss the claims that had been lodged against him in his individual capacity.[2] On 21 February 2012, Defendant filed a motion seeking the entry of summary judgment in his favor. On 19 April 2012, the trial court entered an order denying Defendant's summary judgment motion. On 26 April 2012, Defendant filed a motion seeking reconsideration of the trial court's order denying his summary judgment motion. The trial court denied Defendant's reconsideration motion on 18 May 2012. Defendant noted an appeal to this Court from the trial court's orders denying his summary judgment and reconsideration motions.

## II. Legal Analysis

### A. Summary Judgment Motion

#### 1. Appealability

**[1]** "As an initial matter, we note that the trial court's order denying defendant's motion for summary judgment is interlocutory, and thus, not

---

2. The version of the order granting Defendant's dismissal motion in part and denying it in part contained in the record presented for our review relates solely to the wrongful death action brought by Ms. Allmond's estate. However, it appears to us that a similar order was entered in the personal injury action brought on behalf of Elijah as well.

generally subject to immediate appeal. 'Orders denying summary judgment based on public official immunity, however, affect a substantial right and are immediately appealable.' " *Fraley v. Griffin*, __ N.C. App. __, __, 720 S.E.2d 694, 696 (2011) (citations omitted) (quoting *Dempsey v. Halford*, 183 N.C. App. 637, 638, 645 S.E.2d 201, 203 (2007)) (citing *Snyder v. Learning Servs. Corp.*, 187 N.C. App. 480, 482, 653 S.E.2d 548, 550 (2007), *disc. review petition withdrawn*, 362 N.C. 383, 670 S.E.2d 236 (2008)). As a result, Defendant's appeal is properly before us despite the fact that he seeks review of an interlocutory order.

## 2. Standard of Review

"A party will prevail on a motion for summary judgment only if the moving party . . . can show no material facts are in dispute and entitlement to judgment as a matter of law. In addition, the record is to be viewed in the light most favorable to the non-movant[s], giving [them] the benefit of all inferences which reasonably arise therefrom." *Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 202, 468 S.E.2d 846, 849 (citations omitted) (citing *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995), *aff'd in part and rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997)), *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996) (hereinafter *Epps II*). "A genuine issue of material fact arises when the 'facts alleged . . . are of such nature as to affect the result of the action.' " *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011) (omission in original) (quoting *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971)). In other words, an "issue is material if, as alleged, facts 'would constitute a legal defense, or would affect the result of the action or if its resolution would prevent the party against whom it is resolved from prevailing in the action.' " *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)). A party may "show[] that no triable issue of fact exists by demonstrating that the non-moving party cannot surmount an affirmative defense." *Greene v. Barrick*, 198 N.C. App. 647, 652, 680 S.E.2d 727, 731 (2009). "Our standard of review of a trial court's order granting or denying summary judgment is *de novo*." *Bryson v. Coastal Plain League, LLC*, __ N.C. App __, __, 729 S.E.2d 107, 109 (2012) (citing *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009)). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig*, 363 N.C. at 337, 678 S.E.2d at 354 (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### 3.  Public Official Immunity

#### a.  Availability of Public Official Immunity

[2]  According to well-established North Carolina law, law enforcement officers such as Defendant are public officials for immunity-related purposes. *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999). "A suit against a public official in his official capacity is basically a suit against the public entity (*i.e.*, the state) he represents." *Epps II*, 122 N.C. App. at 203, 468 S.E.2d at 850. For that reason, a civil action seeking the recovery of damages brought against a protected individual in his or her official capacity may only proceed in the event that the State consents to the maintenance of that action or has otherwise waived sovereign immunity. *See Id.* at 204, 468 S.E.2d at 851. On the other hand, "[w]hether or not the official capacity suit moves forward, the plaintiff may simultaneously proceed against the official as an individual." *Id.* Under public official immunity, which "is a derivative form of sovereign immunity," public officials sued in their individual capacity may not be held personally liable unless their actions were " 'corrupt, malicious or perpetrated outside and beyond the scope of official duties.' " *Id.* at 203-04, 468 S.E.2d at 850-51 (quoting *Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991)).

#### b.  Sufficiency of Plaintiffs' Complaints

As a result of the fact that a plaintiff who "wishes to sue a public official in his personal or individual capacity . . . must, at the pleading stage and thereafter, demonstrate that the official's actions . . . are commensurate with one of the 'piercing' exceptions," *Id.* at 207, 468 S.E.2d at 853; *see also Baker v. Smith*, __ N.C. __, __,737 S.E.2d 144, 152 (2012) (noting that the plaintiff had not "alleged in her complaint . . . that defendant [had] acted maliciously, corruptly, or outside the scope of her official authority" and holding that the plaintiff had, for that reason, "failed to allege an element necessary to overcome defendant's affirmative defense of public official immunity"), "we must [first] determine whether the complaint sufficiently alleges corrupt or malicious conduct or that [Defendant] acted outside the scope of his official duties."[3] *Epps v. Duke Univ., Inc.*, 116 N.C. App. 305, 309, 447 S.E.2d 444, 447 (1994)

---

3.  Plaintiffs do not appear to have sufficiently alleged that their claims are entitled to proceed in the face of Defendant's invocation of public official immunity on any basis other than a contention that Defendant exceeded the scope of his official authority, so we will limit the discussion in the text to the sufficiency of Plaintiffs' showing that Defendant is not entitled to a finding of immunity on the basis of a contention that Defendant was acting outside the scope of his official authority at the time of the collision.

(hereinafter *Epps I*). As a result of the fact that Defendant contends that Plaintiffs failed to adequately plead that he is not entitled to public official immunity, we must examine the extent to which Plaintiffs adequately pled that Defendant was not entitled to the benefit of public official immunity.

In their complaints, Plaintiffs alleged that:

> Defendant Goodnight was not acting in response to any official duty of any form, or kind whatsoever nor was he involved in any pursuit, or emergency activity that required, mandated, or permitted the excessive speed at which he was traveling, as he was accelerating up to approximately 120 miles per hour.

Although Plaintiffs did not specifically state that Defendant was acting outside the scope of his official duties in those exact words, we are unable to read the relevant language from Plaintiffs' complaint as asserting anything other than that, at the time of the collision, Defendant was acting outside the scope of his official duties by accelerating to a speed far in excess of the legal speed limit for no legitimate reason. As a result, given that Plaintiffs have alleged that Defendant was "not acting in response to any official duty," their complaints do, when read in light of the ordinary meaning of the words in which their allegations are couched, assert that Defendant was acting outside of the scope of the official duties he was required to perform at the time of the collision in which Ms. Allmond was killed and Elijah was injured.

Admittedly, Plaintiffs did allege in their complaints that:

> At all times relevant hereto, Defendant Goodnight was employed by the State of North Carolina . . . and was operating the automobile in the course and scope of his employment for his employer, in furtherance of the business of his employer, and incident to the performance of duties entrusted to Defendant Goodnight even though as described Defendant Goodnight acted negligently, grossly negligently, wantonly negligently and recklessly.

As Defendant notes, we have recently held that a complaint containing similar language did not suffice to satisfy the requirement that a pleading allege grounds for concluding that public official immunity did not apply, stating that:

> As [the plaintiff] did not allege that the Individual Defendants acted beyond the scope of their authority — and, indeed,

instead alleged that the Individual Defendants "were acting in the course and scope of their employment and their agency as [] police officers" — Wilcox may not now attempt to establish that the Individual Defendants acted beyond the scope of their authority.

*Wilcox v. City of Asheville*, __ N.C. App. __, __, n.2, 730 S.E.2d 226, 230, n.2 (2012) (alteration in original), *disc. review denied*, __ N.C. __, 738 S.E.2d 363 and 366 N.C. 298, 738 S.E.2d 401 (2013). Unlike the pleading at issue in *Wilcox*, however, the complaint at issue here, in addition to containing language similar to that which this Court has held to be insufficient, also specifically alleged that Defendant was acting outside the scope of his official duties. As a result, particularly given that a party's evidentiary forecast and pleadings must be reviewed in the light most favorable to the non-movant, *Coley v. State*, 360 N.C. 493, 494, 631 S.E.2d 121, 123 (2006) (stating that, when considering a motion to dismiss based upon N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), courts are to consider "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory"); *Epps II*, 122 N.C. App. at 202, 468 S.E.2d at 849 (stating that, in considering a motion for summary judgment, the "record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom"), we conclude that Plaintiffs' complaints contained sufficient allegations to preclude a determination that they had failed to adequately allege that Defendant was not entitled to rely on public official immunity as a defense to Plaintiffs' claims.

### c. Adequacy of Plaintiffs' Evidentiary Forecast

[3] After concluding that Plaintiffs' complaints sufficiently alleged the inapplicability of the doctrine of public official immunity, we must next determine whether Plaintiffs forecast sufficient evidence to permit a determination that Defendant was acting outside the scope of his official authority at the time of the collision in which Ms. Allmond was killed and Elijah was injured. We believe that the trial court correctly concluded that Plaintiffs adduced sufficient evidence to support a determination that Defendant was not entitled to summary judgment in his favor under the doctrine of public official immunity.

As we have already noted, "[t]o sustain the personal or individual capacity suit, the plaintiff must initially make a *prima facie* showing that the defendant-official's tortious conduct falls within one of the immunity exceptions, *i.e.*, that the official's conduct is malicious, corrupt, or

outside the scope of official authority." *Epps II*, 122 N.C. App. at 205, 468 S.E.2d at 851-52. For that reason, "the first order of business for a plaintiff bringing an individual capacity suit against an official is a show-ing of an applicable 'piercing' exception," since "[m]ere allegations of negligence, in and of themselves, will not suffice." *Id.* at 207, 468 S.E.2d at 853. In analyzing the sufficiency of the plaintiff's evidentiary forecast in *Epps II*, we observed that:

> Defendant's argument and evidence fall far short of the "no material fact in dispute" standard long adopted by this Court. We held in *Epps I* that defendant Hjelmstad, acting in his capacity as a county medical examiner, is a public officer. *Epps I*, 116 N.C. App. at 311, 447 S.E.2d at 448. The *Epps I* Court also held that[,] "because plaintiffs' com-plaint contains allegations indicating that Hjelmstad acted outside the scope of his official duties, they have stated a valid claim against Hjelmstad in his individual capacity as a public officer." *Id.* Thus, to prevail on his motion for summary judgment, defendant must show that plaintiffs' presentation of properly considered evidence falls short of the allegations found in their complaint.

*Id.* at 202, 468 S.E.2d at 850. As a result, in order to avoid the entry of summary judgment in Defendant's favor on the basis of public official immunity, Plaintiffs must show that, assuming that the facts alleged in their complaints are sufficient to support a determination that Defendant had acted outside the scope of his official duties, the evidentiary fore-cast which they provided supported the allegations in question. In this instance, we are compelled to conclude that Plaintiffs made the required evidentiary showing.

In their complaint, Plaintiffs alleged that, for reasons unrelated to the performance of any official duty, Defendant accelerated to a speed of 120 miles per hour in an area in which the posted speed limit was only 55 miles per hour and collided with the vehicle driven by Ms. Allmond after entering a marked intersection while travelling at that speed. Although Defendant would have clearly been performing an official duty in the event that he operated his motor vehicle at the indicated rate of speed in pursuit of a speeding motorist such as the one described in his own testimony and that of Mr. Duff and Mr. Perry, he acknowledges that he would not have been acting within the scope of his official authority in the event that he was operating his vehicle at a speed of 120 miles per hour for no law enforcement-related purpose. As a result, the validity of Defendant's challenge to the denial of his summary judgment motion

ALLMOND v. GOODNIGHT

[230 N.C. App. 413 (2013)]

rises or falls based upon the extent to which Plaintiffs were able to fore-cast sufficient evidence which, when taken in the light most favorable to Plaintiffs, sufficed to support a determination that Defendant was not pursuing a speeding motorist at the time that he accelerated to a speed of 120 miles per hour.

In the evidentiary materials that he presented in support of his request for summary judgment, Defendant asserts that he was "enforc[ing] all laws and regulations respecting travel and the use of vehicles upon the highways of the State and all laws for the protection of the highways of the State," N.C. Gen. Stat. § 20-188, by pursuing a speeding vehicle at the time of the accident in which Ms. Allmond was killed and Elijah was injured. To support this claim, Defendant presented his deposition testimony, along with that of Mr. Perry and Mr. Duff, to the effect that a speeding vehicle had been traveling in the southbound lane of Business 85 and that Defendant was pursuing that vehicle when his car collided with that driven by Ms. Allmond. In the event that a jury was to believe this evidence, Defendant would clearly be entitled to prevail. For that reason, the burden shifted to Plaintiffs to forecast evidence tending to show that no speeding motorist existed at the time that Defendant began operating his patrol vehicle at a speed of 120 miles per hour in order to preclude the entry of summary judgment in Defendant's favor.

As we have already noted, Mr. Ross testified that he had a clear view of the road from a seat high in the truck that he was operating; that, in the event that Defendant had been pursuing a speeding vehicle, he would have seen it; and that Mr. Ross had not seen any such speeding vehicle. For that reason, Mr. Ross' deposition testimony tends to show that there was no speeding vehicle in the vicinity at the time that Defendant accel-erated his patrol vehicle to a speed of 120 miles per hour. As a result, we conclude that the record reveals the existence of a genuine issue of mate-rial fact concerning the extent, if any, to which Defendant was acting outside the scope of his official duties immediately before and at the time of the accident in which Ms. Allmond was killed and Elijah was injured.[4]

In his brief, Defendant argues that Mr. Ross' testimony to the effect that he would have seen a speeding vehicle is "simply speculative."

---

4. In light of our conclusion that the testimony of Mr. Ross, considered in isolation, is sufficient to preclude the entry of summary judgment in Defendant's favor, we need not address the extent to which the testimony of Mr. Johnson, which Defendant contends to rest upon assertions that violate the laws of physics, and Elijah, which Defendant does not address in detail, would have also sufficed to defeat Defendant's public official immu-nity claim.

As part of his effort to persuade us of the validity of this contention, Defendant points out that Mr. Ross failed to notice Ms. Allmond's vehicle prior to the accident, notes that Mr. Ross admitted that he could not say with absolute certainty that there were no other vehicles, and argues that a decision to find that there was no speeding vehicle based upon Mr. Ross' testimony would rest on the logical fallacy of "negative evidence." In essence, however, Defendant's argument is tantamount to a request that we weigh the credibility of Mr. Ross' testimony and find it wanting, which is an action that we lack the authority to take. *Ragland v. Moore,* 299 N.C. 360, 363, 261 S.E.2d 666, 668 (1980) (stating that, "[i]n ruling on a motion for summary judgment, the court does not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact"). Unlike the "negative evidence" decisions upon which Defendant relies, *Young v. Woodall,* 343 N.C. 459, 463, 471 S.E.2d 357, 360 (1996) (holding that the fact that "[a] witness said [that] she could not tell whether [an officer's headlights] were on" did not tend to show "that the headlights were off"), Mr. Ross indicated that he would have seen a speeding vehicle had one existed and that he made no such observation. Thus, Defendant's argument in reliance upon the "speculative" nature of Mr. Ross' testimony does not justify a decision to overturn the trial court's orders.

In addition, Defendant places substantial reliance on our prior statement that:

> "It is well settled that absent evidence to the contrary, it will always be presumed 'that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law.' This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence." Moreover, "[e]vidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."

*Strickland v. Hedrick,* 194 N.C. App. 1, 10-11, 669 S.E.2d 61, 68 (2008) (alteration in original) (citations omitted) (quoting *Leete v. Cnty. of Warren,* 341 N.C. 116, 119, 462 S.E.2d 476, 478 (1995) and *Dobson v. Harris,* 352 N.C. 77, 85, 530 S.E.2d 829, 836 (2000)). As a result, *Strickland* and related decisions require trial and appellate courts to presume that "public officials will discharge their duties in good faith

and exercise their powers in accord with the spirit and purpose of the law." *Id.* at 10, 669 S.E.2d at 68; *see also Henderson Cnty. v. Osteen*, 297 N.C. 113, 116, 254 S.E.2d 160, 162 (1979) (stating that "[t]he presumption of regularity of official acts is applicable to tax proceedings in this state"); *Dempsey*, 183 N.C. App. at 641, 645 S.E.2d at 205 (applying the presumption to analyze a potential malice exception after determining that the "challenged actions of both defendants were committed within the scope of their official duties").

As the excerpt from *Strickland* upon which Defendant relies clearly indicates, however, the presumption in question is rebuttable rather than irrebuttable. In light of that fact, the ultimate issue raised by Defendant's reliance upon the presumption that a public official acts in good faith and consistently with the spirit and intent of the applicable law is whether Plaintiffs successfully rebutted that presumption. In other words, the issue raised by Defendant's reliance upon the presumption set out in *Strickland* and related cases is whether Plaintiff adduced sufficient evidence that would, if believed, suffice to support a determination that, the presumption of good faith and lawful conduct to the contrary notwithstanding, Defendant exceeded the scope of his legal authority at the time that he accelerated his vehicle to a high rate of speed on Business 85 shortly before the collision in which Ms. Allmond was killed and Elijah was injured. Having previously concluded that Plaintiffs did, in fact, adduce such evidence in the form of Mr. Ross' testimony, we further conclude that Defendant's reliance upon the presumption of good faith and lawful conduct does not justify a decision to overturn the trial court's decision to deny Defendant's summary judgment motions given that the evidence adduced by Plaintiffs, rather than resting upon surmise or supposition, constituted affirmative evidence that Defendant had no valid law enforcement-related justification for his conduct immediately prior to the accident.

According to well-established North Carolina law, "[t]he jury's role is to weigh evidence, assess witness credibility, assign probative value to the evidence and testimony, and determine what the evidence proves or fails to prove." *State v. Moore*, 366 N.C. 100, 108, 726 S.E.2d 168, 174 (2012). In light of that fact and the fact that the validity of Defendant's public official immunity claims hinges upon the resolution of a disputed factual issue, a jury, rather than a trial court ruling on a summary judgment motion, must decide whether Defendant was acting within the scope of his official duties when he accelerated to a high rate of speed immediately prior to the collision in which Ms. Allmond was killed and Elijah was injured. In the event that the jury determines that Defendant was pursuing a speeding motorist at the time that he entered

ALLMOND v. GOODNIGHT

[230 N.C. App. 413 (2013)]

the intersection in which the collision occurred, he will be immune from liability. Although there are certainly grounds for challenging the weight and credibility that should be afforded to the evidence which Plaintiffs have forecast with respect to this issue, it is not for this Court or the trial court to make such weight and credibility determinations. In the event that the jury determines that Defendant was not pursuing such a speeding motorist at that time, the jury must then determine whether, applying the applicable substantive legal principles, Plaintiffs are entitled to recover damages from Defendant. *See Epps II*, 122 N.C. App. at 206, 468 S.E.2d at 852 (holding that, in the event that a public official is not immune, "it is as if the *official* never committed the tortious act, as one stripped of the cloak of office, the tortfeasor is then liable for simple negligence").[5] Thus, the trial court did not err by refusing to grant summary judgment in Defendant's favor on the basis of public official immunity.

## B. Motion for Reconsideration

[4] Secondly, Defendant contends that the trial court erred by refusing to hold that Plaintiffs' claims were barred by principles of judicial estoppel, the theory relied on by Defendant in his motion for reconsideration. More specifically, Defendant argues, in reliance upon our decision in *T-Wol Acquisition Co. v. ECDG South, LLC*, __ N.C. App. __, 725 S.E.2d 605 (2012), that Plaintiffs should be judicially estopped from claiming that Defendant acted outside the scope of his official duties on the grounds that Mr. Allmond filed an affidavit in a State Tort Claims Act proceeding stemming from the same accident before the Industrial Commission in which he stated that, "[a]t the time of the subject wreck, Trooper Goodnight was [acting] in the course and scope of his employment with the North Carolina State Highway Patrol." We do not find this argument persuasive.[6]

---

5. Although Plaintiffs contend that N.C. Gen. Stat. § 20-145 provides a basis for concluding that Defendant is not entitled to rely on a defense of public official immunity in this case, we are unable to accept their argument in light of the fact that nothing in N.C. Gen. Stat. § 20-145 explicitly addresses immunity-related issues and the fact that no decision of either the Supreme Court or this Court has ever held that N.C. Gen. Stat. § 20-145 has any bearing on the extent to which a defendant is entitled to invoke public official immunity.

6. Defendant has not argued that we are entitled to consider his challenges to the trial court's decision to reject his judicial estoppel defense on the merits on an interlocutory basis at any point in his brief. Although we would be entitled to dismiss this portion of his challenge to the trial court's orders as having been taken from an unappealable interlocutory order on this basis, *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (holding that "the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right"), we elect to issue a writ of *certiorari* pursuant to N.C.R. App. P. 21 on our own motion in order to permit review of Defendant's judicial estoppel argument on the merits in the interest of judicial efficiency.

In determining whether a party should be judicially estopped from taking a particular position, the following principles must guide our analysis:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 888-89 (2004) (citations and quotation marks omitted). After carefully analyzing the facts of this case in light of the principles that the Supreme Court has deemed pertinent, we conclude that Plaintiffs are not judicially estopped from asserting a claim against Defendant.

As an initial matter, this Court has specifically held that a plaintiff "may simultaneously proceed against the official as an individual" while maintaining a suit against him in his official capacity. *Epps II*, 122 N.C. App. at 204, 468 S.E.2d at 851. Although a litigant's right to proceed with both official capacity and individual capacity actions does not necessarily authorize a plaintiff to take inconsistent positions, the fact that a plaintiff is entitled to assert both types of claims necessarily creates the potential for assertions that are in tension with each other. Secondly, Defendant has not cited us to any authority holding that a representation that a particular state employee was acting within the course and scope of his employment for State Tort Claims Act purposes is identical to a representation that, for purposes of addressing an issue arising from a claim of public official immunity, the public officer was acting outside the scope of his official authority, and we know of none. Thirdly, given that judicial estoppel "forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation," *Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005), and given that Plaintiffs' State Tort Claims Act proceeding was filed with the Industrial Commission after the filing of the present cases, we are unable to see why Plaintiffs should be estopped in this action, rather than the State Tort Claims Act proceeding, if their claims are subject to

ATL. COAST CONF. v. UNIV. OF MD.

[230 N.C. App. 429 (2013)]

the application of estoppel-related principles at all. Finally, the record contains no indication that Plaintiffs have prevailed in the Industrial Commission on the basis of the assertion upon which Defendant relies, or that Plaintiffs have been unfairly benefitted or Defendant unfairly disadvantaged by this assertion. As a result, the trial court did not err by refusing to hold that Plaintiffs were judicially estopped from asserting their claims against Defendant in his individual capacity.

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that Defendant's challenges to the trial court's orders lack merit. As a result, the trial court's orders should be, and hereby are, affirmed.

AFFIRMED.

Judges CALABRIA and DILLON concur.