IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-140

Filed 15 January 2025

Pitt County, No. 22 CVS 1100

LISA HIGGINS, ADMINSTRATOR OF THE ESTATE OF MICHAEL S. HIGGINS,
Plaintiff,

v.

OMAR ROMERO MENDOZA, in his individual capacity, and BRANDON CESAR
CRUZ, in his individual capacity, Defendants.

Appeal by plaintiff from orders entered 20 December 2022 by Judge Eula Reid

and 11 July 2023 by Judge William D. Wolfe in Superior Court, Pitt County.  Heard

in the Court of Appeals 9 October 2024.

> *J.C. White Law Group, PLLC, by James C. White, for plaintiff-appellant.*
>
> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Brian M. Williams, for defendants-appellees.*

ARROWOOD, Judge.

Lisa Higgins, in her capacity as the administrator of the Estate of Michael S.

Higgins ("plaintiff") appeals from the trial court's orders granting an extension of

time to serve requests for admission and a motion for summary judgment in favor of

Trooper Omar Romero Mendoza ("defendant Romero")[1] and Trooper Brandon Cesar

---

[1] The defendant is referred to by the name of Romero throughout the transcripts and discovery documents, and we adopt the same.

Cruz ("defendant Cruz") (together, "defendants").[2]    Plaintiff contends there was sufficient disputed evidence to find defendant Romero liable for gross negligence, and that the motion for extension of time was filed after the deadline to do so had passed. For the following reasons, we reverse the trial court's order granting summary judgment and remand for further proceedings.

## I.    Background

Michael S. Higgins ("Michael") was a 22-year-old student at East Carolina University ("ECU") majoring in criminal justice and security studies.    ECU maintained an affiliation agreement with North Carolina State Highway Patrol ("NCSHP") for an internship program for qualified college students interested in careers in law enforcement.    Michael enrolled in the internship program at the beginning of the fall semester in August 2020.  As part of the internship, Michael was assigned to ride-alongs to observe NCSHP patrol work and went on two successful ride-alongs with Senior Troopers A.M. Bowen and N.S. Miles.  Per NCSHP Directive O.04 § IV B, ride-alongs may be conducted by Field Training Officers ("FTO") or members holding the rank of Senior Trooper or higher if an FTO is not available.

On or around 17 August 2020, Michael was assigned to a third ride-along with defendant Cruz, who held the rank of Trooper at the time.  Defendant Cruz allegedly

---

[2] Plaintiff filed a motion for voluntary dismissal of the appeal as to defendant Cruz on 30 April 2024, which this Court allowed by order entered 1 May 2024.  This appeal only concerns plaintiff's claims against defendant Romero.

told Michael that he could not bring him on a ride-along because of "some errands he had to run[,]" and suggested that Michael contact defendant Romero, who also held the rank of Trooper. Apparently unaware that defendant Romero was not authorized to take him for a ride-along, Michael texted defendant Romero his request to be assigned and they agreed to do a ride-along on the evening of 21 August 2020 into the morning of 22 August 2020.

At approximately 12:21 a.m. on 22 August 2020, defendant Romero, carrying Michael as a passenger, responded to the scene of an accident where a car had driven off the road into a ditch in Pitt County so that Michael could witness an accident investigation. Defendant Cruz had also responded to the scene, and allegedly told defendant Romero about an unidentified female driver in the area that was observed with an odor of alcohol on her breath; defendant Cruz encouraged defendant Romero to pursue the driver "in a high-speed chase." Defendant Romero allegedly did not notify the dispatch center of the intended high-speed chase or contact a supervisor to get authority to do so. At his deposition, defendant Romero acknowledged that he "never had any contact" with the driver and "did not personally observe any intoxication," and based his pursuit on defendant Cruz's assessment that he "smelled" alcohol on the driver.

With Michael as a passenger, defendant Romero activated the emergency lights and siren and "immediately accelerated his cruiser to a speed of at least 110 miles per hour in a matter of seconds[,]" in an attempt to catch up to the driver's last

known whereabouts. At his deposition, defendant Romero stated his primary consideration in assessing the safety of the road was "the conditions of traffic." When asked about his determination to pursue at that rate of speed, defendant Romero stated he was "trying to catch up to the violator[,]" and determined it would be safe to travel at that speed because "[t]here were no other cars on the roadway." Defendant Romero further stated that he could "see the taillights [of the vehicle] in the distance" when he initiated the pursuit and believed the road he was pursuing on was straight "[b]ecause the vehicle in front of [him] was going straight."

As he continued the pursuit, defendant Romero observed the suspect vehicle braking to the left, indicating a turn or curve in the road, but stated he could not recall any adjustments he made to his driving upon this observation and did not recall seeing a warning sign. Defendant Romero maintained his speed into the curve, at which point the cruiser veered sideways off the roadway, knocking down a utility pole and fence and ultimately colliding with two trees on the passenger side of the vehicle. Michael died a result of the injuries suffered during the crash.

A "Collision Scene Information" report produced by NCSHP indicated that the speed limit on the roadway was 55 miles per hour, and a "Curve ahead" warning sign was present and visible on the side of the roadway. Another report from the Collision Reconstruction Unit indicated that defendant Romero's vehicle was traveling at a speed of 113 miles per hour prior to airbag deployment, and the "high speed coupled with the application of brakes while negotiating a curve could have created a

potentially dangerous combination" leading to defendant Romero losing control of his vehicle. The "critical speed" of the curve was estimated to be between 85 and 100 miles per hour, and the average speed of the suspect was estimated to be between 55 and 65 miles per hour. That report concluded by finding that "Trooper Romero's speed alone would never have allowed him to negotiate this curve successfully, but an improper curve set up that included the application of brakes in the curve increased the probability of loss of control exponentially[,]" leading to Michael's death. The report found defendant Romero violated State Highway Patrol Policy Directive B.02, which provides:

> Any member in an authorized Patrol vehicle may initiate a traffic enforcement response. Prior to initiating such action, the member shall determine if the traffic enforcement response can be accomplished with due regard for the safety of the public, the member and the suspect or violator.

Plaintiff filed a complaint on 25 April 2022 asserting claims against both defendants for gross negligence and willful or wanton conduct. Plaintiff served requests for admission on defendant Romero on 22 July 2022. On 16 August 2022, defendant Romero filed a motion to dismiss pursuant to Rule 12(b)(6). That same day, defendant Romero filed an answer denying wrongdoing and liability and asserting several defenses.

On 29 September 2022, defendant Romero filed a motion for additional time to respond or for relief to set aside responses, which was heard before the trial court on

14 November 2022. The trial court granted defendant Romero's motion pursuant to Rule 6 by order entered 20 December 2022.

Defendant Romero then filed a motion for summary judgment on 23 May 2023. Following a hearing on 15 June 2023, the trial court granted defendant Romero's motion for summary judgment by order entered 6 July 2023. Plaintiff filed notice of appeal on 8 August 2023.

## II.     Discussion

Plaintiff contends the trial court erred in granting summary judgment in favor of defendant Romero because there was sufficient disputed evidence to find defendant Romero liable for gross negligence. We agree.

"We review a trial court's order for summary judgment de novo . . . ." *Robins v. Town of Hillsborough*, 361 N.C. 193, 196 (2007) (citations omitted). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2023). "The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact," and in reviewing evidence at summary judgment, "all inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Gary v. Wigley*, 271 N.C. App. 584, 586 (2020) (cleaned up).

> While summary judgment is rarely appropriate in cases involving negligence and contributory negligence, summary judgment is appropriate in such cases when the moving party carries his initial burden of showing the nonexistence of an element essential to the other party's case and the non-moving party then fails to produce or forecast at hearing any ability to produce at trial evidence of such essential element of his claims.

*Terry v. Pub. Serv. Co. of N. Carolina, Inc.*, 385 N.C. 797, 801 (2024) (quoting *DiOrio v. Penny*, 331 N.C. 726, 729 (1992)).  Furthermore, "[g]ross negligence is determined based on the facts and circumstances of each case and is a matter generally left to the jury."  *Ray v. N. Carolina Dep't of Transp.*, 366 N.C. 1, 13 (2012).

Defendant Romero contends he is exempt from personal civil liability through governmental immunity, and that the proper channel of recovery is to sue him in his official capacity in the Industrial Commission.  We disagree.

Although N.C.G.S. § 20-145 provides immunity to law enforcement officers for ordinary negligence, it does not grant the same for gross negligence:

> The speed limitations set forth in this Article shall not apply to vehicles *when operated with due regard for safety* under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation . . . nor to any of the following when either operated by a law enforcement officer in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation . . . *This exemption shall not, however, protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.*

Our Supreme Court has reiterated that an officer may be held *personally* liable

for injuries to another caused by his gross negligence when pursuing a criminal suspect. *Estate of Graham v. Lambert*, 385 N.C. 644, 658 (2024). That Court has defined "gross negligence" as "wanton conduct done with conscious or reckless disregard for the safety of others." *Bullins v. Schmidt*, 322 N.C. 580, 583 (1988). And that Court has further instructed that "an act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Parish v. Hill*, 350 N.C. 231, 239 (1999).

In *Parish*, our Supreme Court discussed several cases addressing the burden of a plaintiff to show gross negligence on the part of an officer in a vehicle pursuit. In *Young v. Woodall*, the Court held that an officer was entitled to summary judgment on a plaintiff's gross negligence claim where he hit another car while speeding through an intersection. 343 N.C. 459, 463 (1996). The Court found that "[h]is following the [suspect] without activating the blue light or siren, his entering the intersection while the caution light was flashing, and his exceeding the speed limit" were discretionary acts that may have been negligent but did not reach the level of gross negligence. *Id.* Similarly in *Bray v. N. Carolina Dep't of Crime Control & Pub. Safety*, this Court held that a pursuing officer was entitled to summary judgment on a gross negligence claim where that officer crossed the middle line, was traveling at a speed of at least eighty miles per hour on a curving rural road, and lost control of his car resulting in a collision with plaintiff. 151 N.C. App. 281, 284 (2002).

Defendant asserts that *Allmond v. Goodnight*, 230 N.C. App. 413 (2013) is

dispositive in this case and requires affirming the grant of summary judgment. In *Allmond*, a state trooper was sued in his individual capacity in a claim that he violated N.C.G.S. § 20-145. The defendant trooper was driving 120 miles per hour when he collided with the plaintiffs' car, killing an elderly woman and severely injuring her grandson. *Id.* at 415. The trial court denied the defendant's motion for summary judgment which this Court upheld, while also stating: "[i]n the event that the jury determines that Defendant was pursuing a speeding motorist at the time that he entered the intersection in which the collision occurred, he will be immune from liability." *Id.* at 426–27.

We note that although several facts of *Allmond* are similar to the facts of this case, particularly the speed and loss of life in the collision, *Allmond* is an unpublished opinion[3] and is not binding on this Court nor dispositive in this case with respect to determining whether a suit may proceed against defendant Romero in his individual capacity for gross negligence. Furthermore, "[g]ross negligence is determined based on the facts and circumstances of each case and is a matter generally left to the jury." *Ray*, 366 N.C. at 13. Although our Courts have declined to allow suit for gross negligence to continue in other officer pursuit cases, these determinations are based on the peculiar facts and circumstances of each case.

Turning now to this case and viewing the evidence and pleadings in the light

---

[3] Although *Allmond v. Goodnight* does appear in the N.C. App. Vol. 230 book, it was designated as a 30(e) unpublished case with no motion or order altering its publication status.

most favorable to plaintiff, here defendant Romero travelled at an extreme rate of speed in pursuit of a suspected drunk driver and with little to no regard for the conditions of the road or Michael as his passenger. Defendant Romero reached a speed of at least 113 miles per hour, failed to appropriately observe or react to the warning sign or the suspect vehicle's turning and use of brake lights, and ultimately lost control of his vehicle, with the passenger side taking the full impact of the crash. Defendant Romero later acknowledged that he drove in a manner where he was unable to maintain control of his vehicle, and that he was not authorized to take Michael on a ride-along.

The evidence and testimony before the trial court indicates at minimum a genuine issue of material fact as to whether defendant Romero's actions rise to the level of gross negligence. Defendant Romero engaged in a chase at an unnecessarily high speed with reckless disregard for the safety of Michael, his student intern passenger. It should be for the jury to determine whether defendant Romero's actions were needless or manifested a reckless indifference to the rights of Michael. Accordingly, it was improper for the trial court to grant summary judgment in defendant Romero's favor, and we reverse the order and remand for further proceedings.

Plaintiff additionally contends the trial court erred in granting defendant Romero's motion for additional time. However, the reversal of the summary judgment order effectively moots the order granting additional time, and we decline

to address it.

III.    Conclusion

For the foregoing reasons, we reverse the trial court's orders and remand for further proceedings.

REVERSED AND REMANDED.

Judge COLLINS concurs.

Chief Judge DILLON dissents by separate opinion.

DILLON, Chief Judge, dissenting.

Based on the jurisprudence of our Supreme Court and our Court, I conclude that the evidence in the light most favorable to Plaintiff does not show that Defendant Romero Mendoza acted with gross negligence when he crashed his patrol car while in pursuit of a suspected drunk driver resulting in the death of Michael S. Higgins (a passenger in Trooper Mendoza's patrol car). Therefore, I conclude the trial court did not err in granting Trooper Mendoza summary judgment on the claims by the administrator of Mr. Higgins' estate against him. Accordingly, I respectfully dissent.

Trooper Mendoza argues that he is entitled to public official immunity. Indeed, "North Carolina courts have deemed police officers engaged in performance of their duties as public officials for the purposes of public official immunity: a police officer is a public official who enjoys absolute immunity from personal liability *for discretionary acts done without corruption or malice.*" *Bartley v. City of High Point*, 381 N.C. 287, 295 (2022) (internal marks omitted) (emphasis added).

Our Supreme Court has recently explained the wisdom of clothing police officers and other public officials a certain level of immunity for injuries caused by their actions in the performance of their duties:

> A judicially created doctrine steeped in prudential concerns, that immunity shields public officials from tort liability when those officials truly perform discretionary acts within the scope of their official duties. The doctrine has two primary goals: promoting fearless, vigorous, and effective administration of government policies, and dampening trepidation about personal liability that may

> deter competent people from taking office. And as the name suggests, public officer immunity is for public officers—i.e., people charged with duties involving the exercise of some portion of the sovereign power. But the doctrine does not immunize conduct at odds with the protections afforded by it and that underlie its utility. For that reason, an officer is immune only when he lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.

*Estate of Graham v. Lambert*, 385 N.C. 644, 654 (2024) (internal citations and marks omitted).

Our Supreme Court has instructed that, based on G.S. 20-145, an officer, though shielded with public official immunity, may be held personally liable for injuries to another caused by his *gross negligence* when pursuing a criminal suspect. *Parish v. Hill*, 350 N.C. 231, 238 (1999) (stating that "as the law stands currently, in any civil action resulting from the vehicular pursuit of a law violator, the gross negligence standard applies in determining the officer's liability"); *Lambert*, 385 N.C. at 658.[4] That Court has defined "gross negligence" as "wanton conduct done with conscious or reckless disregard for the safety of others." *Bullins v. Schmidt*, 322 N.C. 580, 583 (1988). And that Court has further instructed that "an act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless

---

[4] G.S. 20-145 exempts an officer from speed limit laws but expressly states that the exemption "shall not, however, protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

indifference to the rights of others." *Parish v. Hill*, 350 N.C. 231, 239 (1999).

Our Supreme Court in *Parish* cited several cases to demonstrate that the burden of an injured plaintiff to show "gross negligence" on the part of that officer in pursuit of a suspect is particularly high. For example, that Court cited its decision in *Young v. Woodall*, 343 N.C. 459 (1996), in which it held that an officer, though negligent, was *not* grossly negligent *as a matter of law*, where the evidence showed that the officer's vehicle while speeding through an intersection in hot pursuit of a suspect struck another car. In *Young*, the Court reasoned:

> Applying the gross negligence standard, we hold the superior court should have granted [the officer's] motion for summary judgment. His following the [suspect] without activating the blue light or siren, his entering the intersection while the caution light was flashing, and his exceeding the speed limit wee acts of discretion on his part which may have been negligent but were not grossly negligent.

*Young v. Woodall*, 343 N.C. 459, 463 (1996).

In 2002, our Court, applying *Young*, affirmed a conclusion by the Industrial Commission that an officer who struck a vehicle after crossing the center line in pursuit of a suspect, though negligent, was not *grossly* negligent:

> Plaintiff's attempt to distinguish *Young* is unavailing. Plaintiff argues that in this case, unlike *Young*, [the trooper] crossed the center line in addition to exceeding a safe speed. Also, [the trooper] was traveling at a speed of at least eight miles per hour, at dusk, on a curving, rural road. Finally, [the trooper] lost control of his car resulting in the collision with plaintiff . . . . None of these distinctions, however, would justify this Court in reversing

> the Commission's conclusion that [the trooper] did not engage in "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins*, 322 N.C. at 583.

*Bray v. N.C. Dep't of Crime*, 151 N.C. App. 281, 284 (2002).

Indeed, neither Plaintiff nor the majority in this case has cited a North Carolina case where a police officer was held personally liable for injuries sustained by a third party due to the officer crashing his car while in hot pursuit of a suspect. *See Truhan v. Walston*, 235 N.C. App. 406 (2014) (differentiating between an officer responding to the scene of an accident and an officer in hot pursuit of a suspect).

The evidence in the present case, when viewed in the light most favorable to Plaintiff, showed that Defendant's acts in pursuing a suspected drunk driver was risky: (1) Defendant's blue lights and siren were turned on; (2) Defendant's actions directly and independently caused a collision; (3) Defendant admitted that he "drove [his] cruiser at a speed and in a manner such that [he was] unable to maintain proper control" of his vehicle and he only had one hand on the steering wheel; (4) Defendant violated the policies of NCSHP, as the Internal Affairs report shows, both by taking Michael Higgins as a passenger to this pursuit, and by engaging in the pursuit in the manner which he did; and finally, (5) Defendant's speed was 113 mph in a 55 mph zone. However, based on our jurisprudence, though the manner Trooper Mendoza exercised his discretion in his pursuit of the suspected drunk driver may have been negligent, it did not rise to the level of "wanton conduct", done with "corruption or

malice". Accordingly, I disagree with the majority's conclusion that the trial court erred in granting summary judgment for Trooper Mendoza in his individual capacity.

I note Plaintiff's argument in her brief concern the discovery order (also subject to this appeal) allowing Trooper Mendoza additional time under Rule 6 of our Rules of Civil Procedure to respond to her requests for admissions, where Trooper Mendoza did not seek the extension until after the time he was to respond to Plaintiff's requests had expired. Plaintiff contends the requests were deemed admitted under Rule 36 once the deadline to respond had passed; a Rule 6 extension of time is ineffective to cure *deemed* admissions; and Defendant should have moved to withdraw or amend his deemed admissions.

Generally, where a party fails to timely respond to another party's request for admissions, the facts in question are deemed to be judicially admitted. N.C.G.S. § 1A-1, Rule 36. *See also Goins v. Puleo*, 350 N.C. 277, 281 (1999).

Rule 6(b) grants a trial court with broad authority (with some exceptions, as outlined in the Rule) to extend time periods specified in any of the Rules of Civil Procedure for the doing of any act required by those rules. *See Lemons v. Old Hickory Council*, 322 N.C. 271, 276 (1998) (allowing for the retroactive extension of time for the issuance of a summons after the statute of limitations had expired). Further, under Rule 36(b), a trial court has discretion to "permit withdrawal or amendment" of an admission made under the Rule. N.C.G.S. § 1A-1, Rule 36(b).

Here, to the extent that a trial court may have lacked authority to extend time

*after* a party has failed to timely respond to requests for admissions, I conclude that the trial court did not err. By allowing Trooper Mendoza to respond to Plaintiff's requests after the 30-day deadline, the trial court was, in substance, allowing him to withdraw his deemed admissions or, otherwise, amend his deemed admissions. To me, Plaintiff's argument that another motion is required to withdraw the admissions is overly technical and does not comport with the canon of liberal interpretation of the Rules. *See Sutton v. Duke*, 277 N.C. 94, 99 (1970) ("The North Carolina Rules of Civil Procedure are modeled after the federal rules."); *see also Johnson v. Johnson*, 14 N.C. App. 40, 42 (1972) ("The canon of interpretation of the [ ] Rules is one of liberality, and it has been held in numerous decisions that the general policy of the Rules is to disregard technicalities and form and determine the rights of litigants on the merits.").